**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Tim McCoy HENDERSON,
Defendant-Appellant.**

No. 83–3022.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 6, 1983.

Decided Dec. 1, 1983.

Charles W. Stuckey, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Roger A. Hennagin, Lake Oswego, Or., for defendant-appellant.

Before FLETCHER and ALARCON, Cir-

cuit Judges, and JAMESON *, District Judge.

ALARCON, Circuit Judge:

Tim McCoy Henderson has appealed from the judgment entered following a jury trial wherein he was convicted of theft of timber belonging to the United States government, in violation of 18 U.S.C. § 641 (1976) and depredation of government land in violation of 18 U.S.C. § 1361 (1976).

Henderson seeks reversal on the ground that the district court erred in instructing the jury on willful ignorance. Henderson asserts that the facts do not give rise to such an instruction and that the court misstated the law.

## I.

### PERTINENT FACTS

Henderson purchased four tracts of timberland on the Western slopes of Mt. Hood. He borrowed the down payment from the Cascade Timber Company. He agreed to pay back this debt through removal of timber from the land. The timber on Henderson's land was of marginal commercial value. Adjacent land, owned by the United States government, however, contained timber of prime quality. Logging crews who were ostensibly hired to remove trees from Henderson's property in fact harvested timber on federal land.

## II.

### APPLICABILITY OF THE JEWELL INSTRUCTION

Henderson argues that the facts did not demonstrate that he deliberately closed his eyes and acted with wilful ignorance of the true boundaries to his land. *See United States v. Jewell*, 532 F.2d 697 (9th Cir.) (en banc), *cert. denied*, 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976). We disagree.

There was ample evidence presented by the government to justify an instruction on wilful ignorance. The testimony presented to the jury included the following facts.

One. Two logging supervisors testified that they informed Henderson that they had located intermittent boundary ribbons. They were informed by Henderson to continue cutting and to ignore the ribbons because they did not indicate the true boundary. On the Boulder Creek property, these ribbons had been placed there by Henderson himself to mark the boundary lines.

Two. Mark Phillips, one of the logging supervisors, testified that the timber on the government land was superior quality and the change in quality was readily apparent at the boundary line.

Three. Charles Smay, a district ranger for the United States Forest Service told Henderson that the government would assist him in locating the true boundary to one of the parcels, known as the Arrah Wanna property. He suggested to Henderson that the costs of surveying the land be shared.

Four. A letter was sent to Henderson by Mr. Smay informing him that Henderson would bear the responsibility of confining the logging operations to his land. Henderson admitted receiving the letter, but failed to respond.

Five. At the time Henderson purchased the parcel, known as the Lolo Pass site, he was informed by the real estate agent that there was a previous boundary dispute between the federal government and Clackamas County, Oregon in the vicinity of his property. The title insurance policy issued on the sale of this land contained notice of the boundary dispute. In spite of this warning, Henderson ordered his loggers to cut timber in the disputed area without obtaining a survey.

We are satisfied from reviewing this evidence that a rational trier of fact could find that Henderson acted with wilful ignorance in cutting timber on government land.

Henderson, relying on *United States v. Murrieta-Bejarano*, 552 F.2d 1323 (9th Cir.

---

* Hon. William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1977), argues that a wilful ignorance instruction cannot be given unless the district court makes an express finding that the defendant "deliberately closed his eyes" to certain facts. We do not find such a requirement in *Murrieta-Bejarano*. Henderson relies on the following language:

The *Jewell* instruction should not be given in every case where a defendant claims a lack of knowledge, but only in those comparatively rare cases where, in addition, there are facts that point in the direction of deliberate ignorance.

552 F.2d at 1325.

Here, as noted above, there are compelling facts which show deliberate ignorance. Thus, the district court's implied finding that this is one of those rare cases requiring a *Jewell* instruction was correct and proper.

In *United States v. Jewell*, 532 F.2d 697, this court held that "deliberate ignorance and positive knowledge are equally culpable." *Id.* at 700. We concluded that a statute requiring that the accused act with knowledge or knowingly is satisfied by proof that the defendant acted "with an awareness of the high probability of the existence of the fact in question." *Id.* at 700.

Henderson attacks the wilful ignorance instruction given by the court on the ground that it did not correctly state the law as set forth in *Jewell*. The district court instructed the jury as follows:

Negligence or mistake or even gross negligence doesn't constitute guilty knowledge or intent. In determining what defendant's intend [sic] was with respect to this boundary question you are entitled to consider whether or not defendant deliberately closed his eyes to the obvious or to facts which would be seen or determined in the course of defendant's conduct in trying to locate or establish accurate and proper boundaries. If you find defendant deliberately closed his eyes to the obvious to avoid learning the true boundary lines and was aware of the high probability that the lines he chose were inaccurate then you may, but need not necessarily infer, that defendant acted wilfully and knowingly as to [sic] those terms have been described to you in these instructions.

You may consider generally accepted logging practices, the extent to which the defendant was or was not aware of such practices—the extent to which his actions followed or deviated from those practices, of which he was aware and all other evidence in the case bearing on this issue and [sic] in determining whether or not his conduct was wilful or knowing.

Henderson asks us to hold that this instruction was improper because the trial judge failed to advise the jury that they must find beyond a reasonable doubt that the defendant deliberately closed his eyes and that they must find beyond a reasonable doubt that he was aware of the high probability that he had crossed the boundary line. Henderson argues that *United States v. Valle-Valdez*, 554 F.2d 911 (9th Cir.1977), requires the trial court to remind the jury of the reasonable doubt standard before each separate element of the wilful ignorance instruction. His reliance on *Valle-Valdez* is misplaced. There, we held that the court's instruction was deficient because the court failed to instruct that the evidence must show "a subjective awareness of high probability." 554 F.2d at 914. Here, the district court properly instructed as to the "high probability" requirement.

The district court instructed the jury that each element of the offenses described in the indictment must be proved beyond a reasonable doubt. In fact, the jury was told several times during the court's instruction that the government was required to persuade the jury beyond a reasonable doubt before the accused could be found guilty. It was not necessary to repeat this reasonable standard in the context of the wilful ignorance instruction.

The jury was quite properly informed that it must consider the instruction as a whole, and that no one instruction should be singled out. *See United States v. Wolters*, 656 F.2d 523, 526 (9th Cir.1981).

Finally, Henderson suggests that the *Jewell* instruction should be limited to cases (1) comparable factually to *Jewell* where the defendant was offered a large sum of

money to drive a car across a national border or (2) to matters involving accountants who have a special duty to discover certain facts as in *United States v. Weiner,* 578 F.2d 757 (9th Cir.1978), *cert. denied,* 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978). We decline to do so.

Instructions concerning wilful or deliberate ignorance have been found applicable and appropriate as to diverse crimes and circumstances. *See United States v. Cincotta,* 689 F.2d 238 (1st Cir.) (false claims), *cert. denied,* —— U.S. ——, 103 S.Ct. 347, 74 L.Ed.2d 387 (1982); *United States v. Hanlon,* 548 F.2d 1096 (2d Cir.1977) (fraud); *United States v. Thomas,* 484 F.2d 909 (6th Cir.) (firearms), *cert. denied,* 414 U.S. 912, 94 S.Ct. 253, 38 L.Ed.2d 151 (1973); *United States v. Jacobs,* 475 F.2d 270 (2d Cir.) (conspiracy; stolen securities), *cert. denied,* 414 U.S. 821, 94 S.Ct. 116, 38 L.Ed.2d 53 (1973); *United States v. Sarantos,* 455 F.2d 877 (2d Cir.1972) (false statements to Immigration and Naturalization Service).

We conclude that the facts clearly compelled advising the jury of the law concerning wilful ignorance and that the court did so accurately.

AFFIRMED.