**UNITED STATES of America,**
**Defendant-Appellant,**

v.

**Philbert Rufus McALLISTER,**
**Plaintiff-Appellee.**

No. 83–5127.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 10, 1983.

Decided Nov. 20, 1984.

Fletcher, Circuit Judge, filed a dissenting opinion.

Barbara Davis, San Diego, Cal., for plaintiff-appellant.

Patrick O'Toole, Asst. U.S. Atty., San Diego, Cal., for defendant-appellee.

Before HUG and FLETCHER, Circuit Judges, and REDDEN,* District Judge.

HUG, Circuit Judge:

Philbert Rufus McAllister appeals his conviction for violation of 8 U.S.C. § 1324, which prohibits transportation of aliens who have illegally entered the country. He contends the district court erred in instructing the jury that the Government could prove the knowledge element of the charge by establishing McAllister consciously avoided learning he was transporting aliens. He also claims a violation of Fed.R. Crim.P. 16. We affirm.

## I

Border patrol agents posted at the San Clemente checkpoint saw a truck that entered the adjacent truck scales area, continued through the truck scales, and then went behind the scales inspection area and continued towards the freeway. The agents were suspicious of the truck's activities because it was early morning, the scales were closed, and there was a sign on the freeway stating they were closed. They stopped the truck and asked the driver, McAllister, to identify himself. They also asked if he was willing to open the back of the truck. McAllister agreed and rolled up the rear door about a foot. This revealed the feet and legs of several people; an agent then rolled up the rear door the rest of the way to reveal 31 aliens. The agents testified that McAllister remained expressionless when the truck door was opened and said only, "There are people in there."

McAllister testified that he had no knowledge of the truck's contents. He explained the truck belonged to a man named Danny, who had approached McAllister in a restaurant in San Diego. McAllister stated that he had not known Danny prior to that meeting. According to McAllister's testimony, he became involved with the truck in the following manner: He told Danny that he was unemployed and looking for work and that he had learned to drive a truck in the service. Danny then offered McAllister $25 to drive Danny's truck from San Diego to Los Angeles. About 2:00 a.m. the following morning, Danny brought the truck to McAllister's home. After a stop to buy gasoline, Danny gave McAllister directions to the freeway and instructed him to drive through the San Clemente truck scales area, even though it was closed. Danny also stated that he would drive his car and would meet McAllister on

---

* The Honorable James A. Redden, United States District Judge for the District of Oregon, sitting by designation.

the freeway and lead him to his destination in Los Angeles. McAllister neither inspected the back of the truck nor asked Danny what was in it. He said he inferred it was furniture, but he did not know if he was expected to help unload furniture and he did not know why he would be delivering furniture at 2:00 a.m.

McAllister did drive through the closed truck scales area, which enabled him to avoid the checkpoint of the border patrol. At one point he testified that he did this because a large highway sign said "All Trucks Stop Here." At another point he testified that he could not see the sign because it was raining too hard. The agents testified it was not raining at that time and the 20 × 25 foot sign said "Truck Scales Area Closed."

## II

To establish that McAllister had violated 8 U.S.C. § 1324, the Government was required to prove that McAllister transported an alien "knowing that he [was] in the United States in violation of law, and knowing or having reasonable grounds to believe that his last entry in the United States occurred less than three years prior thereto . . . ." The Government proposed to carry its burden of proof by showing that McAllister made a conscious effort to avoid acquiring the required knowledge, and it therefore requested a jury instruction based on *United States v. Jewell*, 532 F.2d 697 (9th Cir.) (en banc), *cert. denied*, 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976). Over McAllister's timely objection, the jury was instructed as follows:

[H]owever, the government can complete the burden of proof as to guilty knowledge by proving beyond a reasonable doubt that, although the defendant was not actually aware that the aliens were in the United States illegally and that the aliens' last entry had occurred within the last three years, he nevertheless was aware of a high probability that the vehicle contained aliens who were illegally in the United States and whose entry had occurred within the last three years, and

defendant's ignorance of the presence of the illegal aliens in the vehicle was solely and entirely the result of his having made a conscious effort to disregard the nature of that which was in the vehicle, with a conscious purpose to avoid learning the truth.

Of course, guilty knowledge cannot be established by demonstrating mere negligence or even foolishness on the part of the defendant.

Before drawing an inference of guilty knowledge, you should be convinced beyond a reasonable doubt that the defendant willfully blinded himself to what he had every reason to believe were the facts.

The instruction correctly stated the law. However, McAllister contends there was insufficient evidence to justify giving the instruction.

■■■ A *Jewell* instruction is properly given only when a defendant claims a lack of guilty knowledge and there are facts in evidence that support an inference of deliberate ignorance. *United States v. Henderson*, 721 F.2d 276, 277 (9th Cir.1983); *United States v. Suttiswad*, 696 F.2d 645, 651 (9th Cir.1982); *United States v. Murrieta-Bejarano*, 552 F.2d 1323, 1325 (9th Cir. 1977). As we emphasized in *Murrieta-Bejarano*, the cases in which the facts point to deliberate ignorance are comparatively rare, and they must be carefully distinguished from instances where the defendant was merely negligent. The Government may not carry its burden by demonstrating that the defendant was mistaken, recklessly disregarded the truth, or was negligent in failing to inquire. *Suttiswad*, 696 F.2d at 652; *United States v. Williams*, 685 F.2d 319, 321 (9th Cir.1982); *Jewell*, 532 F.2d at 704 n. 21. Instead, the facts must support the inference that the defendant was aware of a high probability of the existence of the fact in question. *Suttiswad*, 696 F.2d at 652; *Jewell*, 532 F.2d at 704 n. 21. An instruction given without an adequate factual basis may improperly lead the jury to infer guilty knowledge without proof of conscious avoidance

of the truth. *Murrieta-Bejarano*, 552 F.2d at 1325.

■ The evidence in this case was sufficient to support the inference of deliberate ignorance. Several factors suggested a high probability that McAllister knew he was engaged in transporting aliens who had illegally entered within the last three years. These included the suddenness of the trip, the fact that it was made at 2:00 a.m., the lack of a specific destination, and the fact that Danny was traveling to Los Angeles also, but would not accompany the truck. McAllister testified he neither looked in the back of the truck nor asked what it contained. He stated he did not know or attempt to learn Danny's last name. He did not ask where he was going in Los Angeles or how he would return to San Diego. McAllister drove through the truck scales area that was closed, which avoided passing the normal border checkpoint where any aliens who had illegally entered could be discovered. His testimony concerning his reason for doing so was inconsistent and implausible and justified a reasonable inference that he did so because he believed illegal aliens were in the truck. These facts all indicate "the defendant tried to close his eyes or ears to what was happening." *United States v. Beckett*, 724 F.2d 855, 856 (9th Cir.1984). The inference is strengthened by the agents' observation that McAllister did not appear surprised to see the aliens when the back of the truck was opened. The use of the *Jewell* instruction thus was not error.

### III

McAllister also claims a violation of rights afforded him under Fed.R.Crim.P. 16. In response to the request of the defendant under Rule 16(a)(1)(A), the Government provided the interview form I–44 that Agent DeWitt had prepared after interviewing McAllister. In pertinent part, the I–44 read as follows:

> He stated first that he did not know that the aliens were in the back of the truck. He stated that he had met a man named Danny in a San Diego restaurant and in the course of the conversation the man asked him if he would drive the above truck to L.A. for him. The man said that he would pay him $25.00 for doing so, and McAllister said that since he was unemployed he agreed. McAllister stated that the man got him on the freeway and told him he would catch him on the highway somewhere north and lead him to the destination in Los Angeles. He stated that the man told him also, that when he got to the truck scales to go in even though they were closed.

At trial, Agent DeWitt was asked to recount his post-arrest interview with McAllister. DeWitt testified that McAllister said he "went with Danny to an unknown address in San Diego, and that the truck in question was already there." McAllister objected on the basis that this statement was not included in the interview report and was not otherwise disclosed to the defense. The defense attorney considered this to be important because she had earlier said in her opening statement that Danny had brought the truck to McAllister's home. McAllister, in fact, testified later in the trial that the truck had been brought to his home.

The district court stated that the defense could explore any variance between the report and Agent DeWitt's testimony on cross-examination. McAllister's attorney did not move to strike the prior testimony at that time. The defense did introduce the I–44 form in evidence and cross-examined Agent DeWitt about whether McAllister had, indeed, made the statement about how he got the truck and if so whether that would be a fact that would ordinarily have been included in the report. Some time thereafter McAllister's attorney moved to strike Agent DeWitt's testimony about how he obtained the truck.

■ We need not determine whether there was a Rule 16 violation or whether, if so, there was an abuse of discretion in denying the motion to strike because, even

assuming this constituted error, it was harmless. We reverse for nonconstitutional error only if it was more probable than not that the error affected the verdict. *United States v. Bailleaux*, 685 F.2d 1105, 1115 (9th Cir.1982); *United States v. Valle-Valdez*, 554 F.2d 911, 916 (9th Cir.1977). In this case, the question of where the appellant obtained the truck was not a significant fact. This minor inconsistency, viewed in the light of the many other inconsistencies in his story and the incredibility of his general explanation of the transaction, would not have had a probable effect on the verdict. Therefore, the error, if any, was harmless.

The judgment is AFFIRMED.

FLETCHER, Circuit Judge, dissenting.

I respectfully dissent.

## I

The majority holds that it was proper under the facts of this case for the trial court to give the *Jewell* instruction. *See United States v. Jewell*, 532 F.2d 697 (9th Cir.) (en banc), *cert. denied*, 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976). Although I agree with the majority's statement that "the facts must support the inference that the defendant was aware of a high probability of the existence of the fact in question," Maj. op. at 5 (citing *United States v. Suttiswad*, 696 F.2d 645, 652 (9th Cir.1982); *Jewell*, 532 F.2d at 704 n. 21), I do not agree that this requirement has been met.

Specifically, the majority acknowledges that the government must prove that McAllister knew both that the aliens were in the United States illegally and that their last entry was within three years last past. *See* 8 U.S.C. § 1324 (1982). For the *Jewell* instruction to be applicable then, the facts must support the inference that McAllister was aware of a high probability of there being aliens in the truck and that they had entered the United States in the last three years. Yet, the majority points to no evidence that McAllister even knew that there were people in the truck, let alone that they were illegal aliens who had entered within the last three years.

The facts of which McAllister was aware could just as easily point to illegal drugs, stolen goods, or a myriad of other crimes—some with lesser and some with greater penalties. As we recognized in *United States v. Murrieta-Bejarano*, 552 F.2d 1323, 1325 (9th Cir.1977), "[a] particular defendant may not have deliberately remained ignorant and not have affirmatively believed that—for example—the truck did not contain drugs. He might simply not have known one way or the other without any effort on his part to avoid learning the truth." This is such a case. The government cannot use proof of willful blindness to activity that could relate to the commission of any of several crimes to prove specific intent to commit a particular crime; the blindness must relate to the essential facts that prove the crime charged. *See Suttiswad*, 696 F.2d at 612; *Jewell*, 532 F.2d at 704 n. 21.

## II

While I dissent from the majority's holding that the *Jewell* instruction was justified, I concur in the conclusion reached by the majority regarding McAllister's claim that his Fed.R.Crim.P. 16 rights were violated. The claimed omission was trivial, inadvertent and harmless beyond a reasonable doubt.