**UNITED STATES of America, Plaintiff-Appellee,**

v.

**PACIFIC HIDE & FUR DEPOT, INC., Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**William KNICK, Defendant-Appellant.**

**Nos. 84–3075, 84–3079.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 7, 1985.

Decided Aug. 15, 1985.

John A. Bryson, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Roger J. Magnuson, Luke Baer, Dorsey & Whitney, William J. Mauzy, Minneapolis, Minn., for defendant-appellant.

Before KENNEDY and NORRIS, Circuit

Judges, and THOMPSON,* District Judge.

KENNEDY, Circuit Judge:

Following a jury trial, defendants William Knick and Pacific Hide & Fur Depot, Inc. were convicted for violations of the Toxic Substances Control Act (TSCA), 15 U.S.C. §§ 2601–2629 (1982). On appeal, Knick and Pacific Hide raise various arguments relating to the sufficiency of the evidence, misjoinder of offenses, prosecutorial misconduct, invalidity of the specific regulations under which they were convicted, miscellaneous evidentiary rulings, and error in instructing the jury. We reverse on the last stated ground, error in the jury instructions, and do not reach the other contentions. We rule it was improper to instruct the jury on the doctrine of deliberate avoidance or willful blindness. *See United States v. Jewell,* 532 F.2d 697 (9th Cir.) (en banc), *cert. denied,* 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976).

Pacific Hide owns and operates scrap metal salvage yards in the Pacific Northwest, and Knick manages its salvage yard in Pocatello, Idaho. Pacific Hide purchased the Pocatello site in 1979 from McCarty's, Inc. At the time of the sale, McCarty's retained ownership of adjacent property known as the McCarty Pit, but granted Pacific Hide the right to remove salvageable ferrous scrap from the pit.

In 1980, after the discovery of electrical transformers containing polychlorinated biphenyls (PCBs) at various salvage yards owned by Pacific Hide, the corporation signed a consent decree with the EPA and sent out directives to yard managers prohibiting the receipt of transformers containing PCBs. The EPA commenced the investigation leading up to the present convictions upon receiving a report from a Pacific Hide employee regarding the drainage and disposal of transformers at the Pocatello site. The employee also reported that he had gathered a number of "black boxes" from various locations around the

pit and buried them in the pit at a particular spot, all at Knick's direction.

As we relate below, the indictment counts respecting the disposal of transformers were dismissed. The parties' battle before the jury, and before us, concerns the black boxes and the issue whether the defendants either knew the characteristics of the boxes or attempted to conceal their chemical components. The black boxes were capacitors, a device used in electrical transmission. The boxes were metal and contained a liquid with prohibited concentrations of PCBs. They varied in size, but, as we understand the record, most of the capacitors were approximately two feet by two feet by six inches in dimension.

When the EPA investigators first visited the Pocatello salvage yard, they found no evidence of transformer disposal but did observe hundreds of the black boxes scattered throughout the McCarty pit, in plain view. Most of the capacitors had been received from Idaho Power between 1970 and 1973 by the McCartys, not by Pacific Hide. Neither the investigation nor the proof at trial disclosed that any of the capacitors had been transported to the pit initially by Pacific Hide.

The grand jury returned a five-count indictment charging appellants with: (1) wrongful disposal of capacitors, in violation of 40 C.F.R. § 761.10(b) (1981); (2) failure to mark PCB capacitors, in violation of 40 C.F.R. § 761.20(c) (1981); (3) failure to keep records of PCB capacitor disposal, in violation of 40 C.F.R. § 761.180(b) (1981); (4) wrongful disposal of transformer fluid containing PCBs, in violation of 40 C.F.R. § 761.60(a) (1982); and (5) failure to notify the appropriate agency of the transformer fluid disposal, in violation of 42 U.S.C. §§ 9603(b), (c) (1982). The last two counts, relating to the disposal of the transformer fluid, were dismissed at the close of defendants' case for insufficiency of the evidence. The remaining counts, relating to the capacitors, were submitted to the jury.

---

* Honorable Bruce R. Thompson, Senior U.S. District Judge for the District of Nevada, sitting by designation.

The imposition of criminal sanctions under the TSCA requires proof of knowing or willful violations of the regulations issued thereunder. 15 U.S.C. §§ 2614, 2615(b) (1982). Consequently, if defendants did not know the capacitors contained PCBs, their convictions were improper. With regard to intent, the court instructed the jury as follows:

> [Y]ou may find that any particular defendant acted knowingly if you find beyond a reasonable doubt that the defendant was aware of a high probability that the capacitors contained PCBs in concentrations over 50 parts per million and deliberately avoided learning the truth. You may not find such knowledge, however, if you find that the defendant actually believed that the capacitors or transformers contained PCBs in concentrations of 50 PPM, or less, or if you find that the defendant was simply careless.

The use of the so-called *Jewell*, or deliberate avoidance instruction, on the facts of this case was erroneous and requires reversal.

We first authorized the use of a deliberate avoidance instruction in the context of a prosecution for importation of controlled substances, and subsequent cases approving its use have presented similar factual patterns. *See, e.g., United States v. Lopez-Martinez*, 725 F.2d 471, 474–75 (9th Cir.) (importation and possession of heroin with intent to distribute), *cert. denied,* —— U.S. ——, 105 S.Ct. 134, 83 L.Ed.2d 74 (1984); *United States v. Suttiswad*, 696 F.2d 645, 649–52 (9th Cir.1982) (same); *United States v. Nicholson*, 677 F.2d 706, 710–11 (9th Cir.1982) (conspiracy to import and possess marijuana with intent to distribute); *United States v. Erwin*, 625 F.2d 838, 841 (9th Cir.1980) (importation of heroin). We have also permitted the use of a *Jewell* instruction outside the context of a drug prosecution. *See, e.g., United States v. Henderson*, 721 F.2d 276, 277–79 (9th Cir.1983) (theft of timber from government land where defendant claimed ignorance regarding the true boundaries of his land); *United States v. Long*, 706 F.2d 1044, 1056 (9th Cir.1983) (theft of meat from military installation where base commissary supervisor claimed ignorance of meat's true destination); *United States v. Weiner*, 578 F.2d 757, 786–87 (9th Cir.) (per curiam) (securities fraud in the context of false financial statements where independent auditors proclaimed ignorance of the true state of affairs), *cert. denied,* 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978); *United States v. Eaglin*, 571 F.2d 1069, 1074–75 (9th Cir.1977) (concealment of escaped federal prisoner where defendant denied knowledge that the person aided was an escapee), *cert. denied,* 435 U.S. 906, 98 S.Ct. 1453, 55 L.Ed.2d 497 (1978).

■ In light of the evidence adduced by the prosecution in this case, however, the district court's decision to instruct the jury on the doctrine of deliberate avoidance was error. A *Jewell* instruction is properly given only when defendant claims a lack of guilty knowledge and the proof at trial supports an inference of deliberate ignorance. *McAllister v. United States*, 747 F.2d 1273, 1275 (9th Cir.1984); *Henderson,* 721 F.2d at 277; *Suttiswad,* 696 F.2d at 651; *United States v. Garzon*, 688 F.2d 607, 609 (9th Cir.1982); *United States v. Murrieta-Bejarano*, 552 F.2d 1323, 1325 (9th Cir.1977). It is not enough that defendant was mistaken, recklessly disregarded the truth, or negligently failed to inquire. *McAllister,* 747 F.2d at 1275. *Accord United States v. Williams*, 685 F.2d 319, 321 (9th Cir.1982); *Jewell,* 532 F.2d at 704 n. 21. Instead, the government must present evidence indicating that defendant purposely contrived to avoid learning all of the facts in order to have a defense in the event of subsequent prosecution. *United States v. Beckett*, 724 F.2d 855, 856 (9th Cir.1984) (per curiam); *Garzon,* 688 F.2d at 609; *Murrieta-Bejarano,* 552 F.2d at 1326 (dissenting opinion). Absent such evidence, the jury might impermissibly infer guilty knowledge on the basis of mere negligence without proof of deliberate avoidance. *McAllister,* 747 F.2d at 1275–76.

■ In the case before us, the government has presented insufficient evidence of

willful blindness on the part of defendants to warrant a *Jewell* instruction. There was no evidence that defendants deliberately avoided learning the true nature of the fluid inside the capacitors so as to build a defense in the event of arrest. Knick received no warning from the Pacific Hide main office regarding the possibility of PCBs in capacitor fluid. The government presented no evidence which would demonstrate Knick knew what capacitors were or what they contained. His ignorance in this regard is amply demonstrated by the attempt to hide drums of mineral oil, which differs in both odor and consistency from PCB fluids, out of fear the oil might contain PCBs. Most importantly, despite his knowledge of the EPA investigation, Knick allowed numerous capacitors to lie around the pit in plain view even though many were leaking a fluid which experts would recognize as containing PCBs. The evidence cannot support an inference of deliberate avoidance.

The testimony cited by the government does not alter our conclusion. Primarily, the government contends that Knick's instruction to the employee to bury the capacitors demonstrates his guilty knowledge. Yet burial of the capacitors prevented their fluids from interfering with the machinery operating on the surface of the pit. More importantly, this evidence, to the extent relevant, points to actual knowledge, rather than deliberate avoidance. It does not support the giving of a *Jewell* instruction. *See Beckett,* 724 F.2d at 856. The government also relies on Knick's knowledge regarding the presence of PCBs in transformer fluid. Because of the outward dissimilarity between transformers and capacitors, however, that evidence is inconclusive. Finally, the government relies upon a statement by Knick to an EPA agent that "there is (sic) some things that you just don't want to know." The government takes the remark completely out of context. Knick's comment concerned the disposal of non-PCB-containing transformer cores received from Monsanto. It had no relevance to the capacitors and does not

establish deliberate avoidance on the part of defendants.

The government failed to produce evidence from which a reasonable juror could conclude beyond a reasonable doubt that defendants were aware of a high probability that the capacitors contained PCBs in concentrations of over 50 parts per million and deliberately avoided learning the truth. In the circumstances of this case, the jury could have found defendants guilty without making the determination that they had the requisite intent to violate the statute. Accordingly, the convictions must be set aside. The convictions are REVERSED.