972 F.2d 1345
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alonso GONZALEZ-LOPEZ, Defendant-Appellant.
 No. 91-50731.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 9, 1992.*
Decided July 23, 1992.
 
 Before FARRIS, WIGGINS and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Alonso Gonzalez-Lopez (Gonzalez) appeals his conviction for importing an alien for immoral purposes (8 U.S.C. § 1328), transportation of a person for prostitution (18 U.S.C. § 2421), and harboring an illegal alien (8 U.S.C. § 1324(a)(1)(c)). We affirm.
 
 STATEMENT OF CASE
 
 3
 Gonzalez and his wife were arrested on April 27, 1991 as they drove out of a migrant labor camp in Valley Center, California. The camp was under general surveillance by INS agents as part of a larger investigation into prostitution rings, which culminated in several cases including United States v. Hernandez, No. 91-0330-G. Gonzalez and his wife were transported to the immigration investigations office in San Diego. Gonzalez was advised of his Miranda[1] rights. In response to questions by INS Special Agent Salvador Brisneo, Gonzalez stated that he understood his rights and that he did not want to have an attorney present. Gonzalez admitted that he had transported people for prostitution purposes and received money on three occasions; that he had smuggled Miriam Castellanos-Flores (Castellanos) into the United States on two occasions for prostitution purposes and that she had lived with him and his wife. He also identified himself in surveillance videotapes taken at the migrant labor camp. At trial, the government presented its evidence through only two witnesses, Agent Briseno and Castellanos. The jury found Gonzalez guilty.
 
 DISCUSSION
 I. Brady Violations
 
 4
 "Brady v. Maryland requires the prosecution to disclose evidence to the defense that is both favorable to the accused and material either to guilt or punishment. 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963)." United States v. Boshell, 952 F.2d 1101, 1106 (9th Cir.1991).
 
 
 5
 a. Diaz Statement
 
 
 6
 Disclosure of Marco Diaz's statement at trial rather than pre-trial did not violate Brady. See United States v. Aichele, 941 F.2d 761, 764 (9th Cir.1991); United States v. Gordon, 844 F.2d 1397, 1402 (9th Cir.1988). The statement was disclosed at a time when it was of value to petitioner: it was disclosed to the defense during trial, admitted into evidence, and used by the defense. The statement was also contained in Agent Briseno's report that was provided to the defense at the beginning of trial. See United States v. Van Brandy, 726 F.2d 548, 551 (9th Cir.1984), cert. denied, 469 U.S. 839, 105 S.Ct. 139, 83 L.Ed.2d 79 (1984).
 
 
 7
 b. Cortez Information
 
 
 8
 Brady does not require the government to turn over information not in its possession or control. United States v. Monroe, 943 F.2d 1007, 1011 n. 2 (9th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1585, 118 L.Ed.2d 304 (1992). The prosecution turned over the only information it had in its possession regarding Cesar Cortez--a photograph of Cortez. Nothing more was required.
 
 
 9
 c. Vehicle Registration
 
 
 10
 The government had no obligation to produce evidence that it did not possess and was not aware of. Monroe, 943 F.2d at 1011 n. 2. The government did try to locate a car previously seized from Gonzalez and the registration documents for that car. It was unable to find them. The government had no duty to preserve the evidence because the car and its contents did not possess an exculpatory value that was apparent before the evidence was destroyed or lost, there was no suggestion of bad faith on the part of the government, and the information--the car registration in Cortez's name and the date of the purchase--can be obtained by other reasonably available means such as checking Department of Motor Vehicle records. See Paradis v. Arave, 954 F.2d 1483, 1488-89 (9th Cir.1992).
 
 
 11
 d. Deposition Statements of Material Witnesses
 
 
 12
 The government was not required to disclose the deposition statements of prostitutes detained in the unrelated Hernandez prostitution ring case. They claimed that Agent Briseno had put pressure on them. However, there was no showing of any coercion involved in Gonzalez's case; thus, the evidence that other witnesses in an unrelated case might have been pressured into making statements would be marginally relevant at best. The one witness directly relevant to this case, Castellanos, was fully available to the defense and was thoroughly cross-examined at trial. See United States v. Valenzuela-Bernal, 458 U.S. 858, 871, 102 S.Ct. 3440, 3448, 73 L.Ed.2d 1193 (1982). Moreover, the statements would not have been material to impeach Briseno because they would have been inadmissible under Fed.R.Evid. 608(b). See Monroe, 943 F.2d at 1012-13.
 
 
 13
 e. Incomplete Report
 
 
 14
 Gonzalez claims that the prosecution failed to disclose the full facts testified to by Agent Briseno at trial. Defense counsel had the substance of Gonzalez's statements contained in Briseno's report. See United States v. McAllister, 747 F.2d 1273, 1276-77 (9th Cir.1984), cert. denied, 474 U.S. 829, 106 S.Ct. 92, 88 L.Ed.2d 76 (1985); Van Brandy, 726 F.2d at 551 (incomplete FBI file). Any error was harmless because Gonzalez's identification statement and the additional peripheral facts that Briseno testified to at trial were inculpatory, rather than favorable to his defense. See McAllister, 747 F.2d at 1277. Also, any inconsistency between the report and Briseno's trial testimony was easily explorable on cross-examination. See id.
 
 II. Deportation of Alien Witnesses
 
 15
 To support a claim that the government's deportation of alien witnesses violated a defendant's constitutional rights, a defendant "must make an initial showing that the Government acted in bad faith and that this conduct resulted in prejudice to the defendant's case." United States v. Dring, 930 F.2d 687, 693 (9th Cir.1991) (footnote omitted), petition for cert. filed May 11, 1992; see Valenzuela, 458 U.S. at 873, 102 S.Ct. at 3449.
 
 
 16
 The benefit which was to be obtained from the testimony of the prostitute witnesses was purely speculative. They were not eyewitnesses to Gonzalez's activity nor would they have allegedly testified to any specifics regarding those activities. See Valenzuela, 458 U.S. at 861, 874, 102 S.Ct. at 3443, 3450; Dring, 930 F.2d at 695. Gonzalez asserts that they could corroborate his story that he was with them and Castellanos at the labor camp simply because he picked all of them up at the side of the road when their car broke down and had took them to the camp as a favor. That they would so testify is exceedingly problematic, especially since one of the group, Castellanos, was available for cross examination and was not questioned on the subject. See Valenzuela, 458 U.S. at 871, 102 S.Ct. at 3448. Moreover, Gonzalez has not established any bad faith on the part of the government in deporting these aliens. See Dring, 930 F.2d at 695. Deporting witnesses in an unrelated case does not show any bad faith on the part of the government in Gonzalez's case.
 
 III. Statements
 
 17
 Gonzalez's statements made to the INS agent were admissible because petitioner voluntarily waived his Miranda rights. Gonzalez makes no allegations that his statements were coerced. "Coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary.' " Colorado v. Connelly, 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986); see Kelley, 953 F.2d at 565. Gonzalez's slight intoxication is also insufficient to render his subsequent confession involuntary. Medeiros v. Shimoda, 889 F.2d 819, 823 (9th Cir.1989), cert. denied, 496 U.S. 938, 110 S.Ct. 3219, 110 L.Ed.2d 666 (1990); see Kelley, 953 F.2d at 564-65. Gonzalez was able to drive an automobile, obey the agent's orders during the stop, cooperate in conversing with the agent, and was coherent and responsive to the agent's questioning after a one and one-half hour car ride. See Medeiros, 889 F.2d at 823. Thus, Gonzalez's waiver and statements were voluntary.
 
 IV. Videotape Evidence
 
 18
 The videotapes were properly admitted into evidence because they are direct evidence of Gonzalez's knowledge and participation in transporting an alien for the purposes of prostitution.
 
 V. Substitution of Judge
 
 19
 Judge Huff was properly substituted when Judge Gilliam became ill. Federal Rule Criminal Procedure 25(a) permits the substitution of a judge during a jury trial if the judge becomes sick and is unable to proceed with trial, and if the new judge certifies that she has familiarized herself with the record of the trial. See United States v. Lane, 708 F.2d 1394, 1396 (9th Cir.1983). Judge Huff was substituted only after the trial was continued twice to see if Judge Gilliam's health improved. Judge Huff stated that she had familiarized herself with the record of the trial. Gonzalez has not demonstrated that he suffered any prejudice from the substitution. See Lane, 708 F.2d at 1396-97.
 
 
 20
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)