33 F.3d 60
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Oscar RUBIO-VASQUES, Defendant-Appellant.
 No. 93-10457.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 12, 1994.
Decided Aug. 17, 1994.
 
 Before: FERNANDEZ, RYMER, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Oscar Rubio-Vasques (Rubio) appeals his conviction and sentence for importation of cocaine in violation of 21 U.S.C. Secs. 952(a) & 960(a)(1). We affirm.
 
 A. Deliberate Ignorance Instruction
 
 3
 We approved the use of a deliberate ignorance instruction in United States v. Jewell, 532 F.2d 697, 702-04 (9th Cir.) (en banc ), cert. denied, 426 U.S. 951 (1976); however, it "should not be given in every case where a defendant claims a lack of knowledge, but only in those comparatively rare cases where, in addition, there are facts that point in the direction of deliberate ignorance." United States v. Murrieta-Bejarano, 552 F.2d 1323, 1325 (9th Cir.1977); see also United States v. Perez-Padilla, 846 F.2d 1182, 1183 (9th Cir.1988). Where no facts support deliberate ignorance, there is a danger that the instruction will create a presumption of guilt, Murrieta-Bejarano, 552 F.2d at 1325, and thus the Government does not carry its burden "by demonstrating that the defendant was mistaken, recklessly disregarded the truth, or was negligent in failing to inquire." United States v. McAllister, 747 F.2d 1273, 1275 (9th Cir.1984), cert. denied, 474 U.S. 829 (1985).
 
 
 4
 We have upheld the use of a deliberate ignorance instruction where the facts and circumstances created a high probability of criminal activity that the defendant then ignored. See, e.g., Perez-Padilla, 846 F.2d at 1183 (defendant denied knowledge of cocaine found in clear plastic bag in his suitcase; he claimed that another man had placed it there; defendant thought it was jewelry or gun, but not drugs, and he did not look); McAllister, 747 F.2d at 1276 (defendant denied knowledge that he was transporting aliens into the United States); United States v. Suttiswad, 696 F.2d 645, 647, 649-51 (9th Cir.1982) (defendant denied knowledge that he was importing heroin in empty suitcase); Murrieta-Bejarano, 552 F.2d at 1325 (marijuana importation; defendant denied knowledge of marijuana found in a compartment under the bed of truck); Jewell, 532 F.2d at 699 & n. 2, 700-04 (same). We have disapproved the use of a Jewell instruction where "there were no suspicious circumstances surrounding the activity beyond direct evidence of the illegality itself, which goes only to actual knowledge." United States v. Sanchez-Robles, 927 F.2d 1070, 1073 (9th Cir.1991).
 
 
 5
 The facts in this case support a reasonable inference that Rubio "tried to close his eyes or ears to what was happening." McAllister, 747 F.2d at 1276 (internal quotations omitted). We upheld the use of the Jewell instruction in a case similar to the present case. See Murrieta-Bejarano, 552 F.2d at 1324-25 (defendant stopped as he attempted to cross border and search of pickup he was driving revealed hidden compartment in truck bed containing 138 pounds of marijuana). Similarly, in Jewell, customs officials found 110 pounds of marijuana concealed in a secret compartment between the trunk and rear seat. 532 F.2d at 698.
 
 
 6
 Like the facts in Murrieta-Bejarano and Jewell, the facts in this case are sufficient to support the inference that Rubio was aware of a high probability that drugs were in the truck and that he deliberately avoided learning the truth.[1] See McAllister, 747 F.2d at 1275. First, the trip came about suddenly, according to Rubio's initial version of events in which he stated that he had just met Chema the same day of the trip. See id. at 1276 (suddenness of trip one of several factors which supported high probability that defendant knew he was transporting aliens and that he consciously avoided learning the truth). Second, Rubio did not make any inquiries, such as the reasons for the trip or why Chema, who he knew could not enter the United States legally, would be travelling to Los Angeles. Although Rubio looked at the bed of the truck, his examination was not thorough. See id. (defendant neither looked in back of pickup nor asked what it contained; defendant did not ask other pertinent questions about the trip, such as where he was going in Los Angeles or how he was to return); see also Murrieta-Bejarano, 552 F.2d at 1325 (deliberate ignorance instruction appropriate where defendant failed to make relevant inquiries). In Murrieta-Bejarano, this court also found it persuasive that the defendant had "spent his entire life within a two-hour drive of the border and was aware of the drug traffic between the two countries." 552 F.2d at 1325. Such a fact supports an inference that, at the very least, a defendant such as Rubio, who has lived near the border, would be on notice and would make inquiries in suspicious circumstances.[2]
 
 
 7
 Third, according to the customs inspectors, Rubio did not appear surprised or angry when they told him they had found cocaine in the pickup. See Murrieta-Bejarano, 552 F.2d at 1325 (defendant showed no surprise when marijuana was found in hidden compartment under bed of the truck he was driving across border); see also McAllister, 747 F.2d at 1276 (deliberate ignorance inference strengthened by agents' observation that defendant did not appear surprised to find aliens in back of pickup).
 
 
 8
 Fourth, Rubio gave inconsistent versions of his story. See McAllister, 747 F.2d at 1276 (defendant gave inconsistent reasons for suspicious conduct at border); see also Murrieta-Bejarano, 552 F.2d at 1324 (defendant first said that he knew or suspected there was marijuana in the truck and then later denied such knowledge). Initially, Rubio stated that he had just met Chema the day of the trip. Later he stated that he had known him for several months and he testified that he had met him at least five times before the day of the trip. At first, he told the inspectors that he owned the truck and then later told them he borrowed it from Chema. He subsequently asserted that Chema paid him to drive it across the border.
 
 
 9
 We also reject Rubio's claim that the effect of the instruction allowed the jury to convict based upon negligent conduct because the jury was specifically instructed otherwise. In issuing the deliberate ignorance instruction, the district court told the jury that it could not find that Rubio acted "knowingly" if it found "that the defendant actually believed that no drugs were in the truck he was driving, or if [they found] the defendant was simply careless."
 
 B. Vehicle Activity Report
 
 10
 Rubio next objects to the admission of a vehicle activity report which indicated the crossing activity for the truck Rubio was driving. Although we agree with Rubio that the district court erred in admitting this evidence, we find the error harmless.
 
 
 11
 During the motion in limine, the Government argued that the evidence would "show that the truck was purchased and converted into a drug courier car, and as such is a part of [its] circumstantial evidence regarding the defendant's knowledge." The district court admitted the vehicle activity report over the defendant's objection, not to show that Rubio owned the car, "but it can be circumstantial evidence to show that this car entered the country through the Port of Entry on four prior occasions." It was error to admit the report because there was no evidence to connect Rubio to the prior entries, and thus the report was not relevant to establish his knowledge on October 31, 1992. Indeed, during cross-examination, the agent admitted that from the report there is no way of determining the identity of the truck's occupants on the three prior crossings. Nor was there testimony from anyone else as to the individuals involved in these prior crossings. Moreover, the report does not indicate that anyone was arrested for any illegal activity. Therefore, absent any connection to Rubio, it was improper to admit the vehicle activity report.
 
 
 12
 Nonetheless, the error was harmless. Given the evidence presented in this case, including Rubio's inconsistent statements, "it is more probable than not that the prejudice resulting from the error did not materially affect the verdict." United States v. Echavarria-Olarte, 904 F.2d 1391, 1398 (9th Cir.1990) (rulings on admissibility of evidence where Fourth Amendment claims are not involved are considered non-constitutional).
 
 C. Improper Prosecutorial Statements
 
 13
 We also reject Rubio's argument that the district court should have granted his motion for a mistrial after the prosecutor made reference to his prior contact with border towns and the drug trafficking associated with the border. Rubio claims that there was no evidence to support the factual statements in the prosecutor's closing argument regarding Rubio's association with border towns. Yet, Rubio testified that he was born and raised in Mexicali, Baja California and that after obtaining a resident alien card, he lived and worked in the United States. He also testified that he often traveled between the United States and Mexico. Moreover, it is common knowledge that drug trafficking occurs at the border. The prosecutor was arguing a permissible inference the jurors could draw based upon those two facts, i.e., that Rubio was deliberately avoiding knowledge of the cocaine. The jury was free to disregard such an inference.
 
 
 14
 Rubio relies upon a Sixth Circuit case, United States v. Solivan, 937 F.2d 1146 (6th Cir.1991), in which the prosecutor told the jury that they should convict the defendant and thereby send a message to the defendant and all other drug dealers like her. Id. at 1148. The Sixth Circuit held that the remarks were so prejudicial and inflammatory as to deprive the defendant of a fair trial. Id. at 1150-53. Unlike the prosecutor's remarks in the present case, the comments in Solivan appeared to that court to be "deliberately injected into the proceedings to incite the jury against [the] defendant.... [T]he purpose and effect of the comments could only have been to arouse passion and prejudice." Id. at 1154.
 
 
 15
 Further, unlike the comments in Solivan, the prosecutor's remarks in this case were not intended to inflame the jury about a public policy concern. Rather, the statements were proper given the facts of this specific case. We find that the district court did not abuse its discretion in denying Rubio's motion for a mistrial.[3]
 
 D. Marginal Participant
 
 16
 Rubio argues that he was entitled to a downward departure for being a marginal participant. We lack jurisdiction to review a district court's discretionary refusal to depart downward from the Guidelines. United States v. Garcia-Garcia, 927 F.2d 489, 490 (9th Cir.1991). Although we have authority to review a refusal to depart downward when the district court finds that the Guidelines preclude departure if the court indicates it would otherwise have departed, see United States v. Belden, 957 F.2d 671, 676 (9th Cir.), cert. denied, 113 S.Ct. 234 (1992), this case does not fall within that exception. The district court did not find that it lacked authority to depart; rather, it exercised its discretion in refusing to depart. Moreover, the fact that the district court did not explicitly state that it had authority to depart downward does not render an otherwise unreviewable decision reviewable. See Garcia-Garcia, 927 F.2d at 491 ("[F]ailure to depart, when the record is silent on the issue of authority, and sentence is imposed within the applicable guideline range, is not unlawful and is not appealable on that basis."). The sentence was imposed within the applicable Guideline range. Therefore, we lack jurisdiction to review the district court's discretionary decision not to depart downward.
 
 
 17
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The Government need not establish that Rubio knew the precise nature of the substance he was importing as long as it established that he knew he was importing a controlled substance. See Jewell, 532 F.2d at 698
 
 
 [2]
 Rubio testified that he was born and raised in Mexicali, Baja California and that after obtaining a resident alien card, he has lived and worked in the United States. He also testified that he often travels between the United States and Mexico
 
 
 [3]
 Even were we to assume that the comments were improper, we conclude that do not constitute reversible error. See United States v. Sherlock, 962 F.2d 1349, 1364 (9th Cir.) ("Prosecutorial comments to which defendant objects are reviewed for 'harmless error.' " (internal quotations omitted)), cert. denied, 113 S.Ct. 419 (1992). The prosecutor's comments in this case did not divert the jury from the issues; nor did they, in the context of the entire trial, "affect the jury's ability to judge the evidence fairly." Id. at 1364-65