UNITED STATES of America, Plaintiff–
Appellee–Cross–Appellant,

v.

Robert P. AGUILAR, Defendant–
Appellant–Cross–Appellee.

Nos. 90–10597, 91–10024.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 21, 1995.

Decided Jan. 25, 1996.

Robert D. Luskin and Joseph G. Davis, Comey Boyd & Luskin, Washington, D.C., Paul B. Meltzer, Meltzer & Leeming, Santa Cruz, California, for defendant-appellant-cross-appellee.

Patty M. Stemler and Sara M. Lord, United States Department of Justice, Washington, D.C., for plaintiff-appellee-cross-appellant.

Before WALLACE, Chief Judge, HUG, SCHROEDER, FARRIS, PREGERSON, NORRIS, REINHARDT, BRUNETTI, KOZINSKI, LEAVY, and FERNANDEZ, Circuit Judges.

Opinion by Judge HUG; Dissent by Judge FERNANDEZ.

HUG, Circuit Judge:

The appellant, United States District Judge Robert Aguilar, was charged with five criminal violations. Trial was held on August 1, 1990. The jury acquitted him of three of the charges and convicted him of two. The convictions were for one count of illegally disclosing a wiretap application in violation of 18 U.S.C. § 2232(c) and for one count of endeavoring to obstruct the due administration of justice in violation of 18 U.S.C. § 1503. The appellant was sentenced to two six-month terms of imprisonment, to be served concurrently, and fined $2,000.

After rehearing en banc, we reversed both convictions on the ground that the conduct involved was not covered by the statutory language. *United States v. Aguilar*, 21 F.3d 1475 (9th Cir.1994) (en banc). The Supreme Court granted certiorari and upheld the reversal of the conviction under section 1503, but it reversed our holding on the section 2232(c) charge and remanded for us to consider issues we did not reach in our previous en banc opinion. *United States v. Aguilar*, — U.S. —, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995). Because the Supreme Court upheld the reversal of the section 1503 conviction, the only remaining conviction is the one under section 2232(c). The principal issues before us are: (1) whether the instruction on the element of knowledge which was necessary to convict under the section 2232(c) wiretap charge was erroneous and (2) if it was erroneous, was the error harmless. The Government cross-appeals the sentence imposed. We conclude that the instruction was erroneous and that the error was not harmless. Therefore, we reverse the conviction and remand the case to the district court. We do not reach the sentencing issue. The facts are set forth in our prior opinion.

## I.

### *STATUTORY REQUIREMENTS*

The sole remaining charge in this appeal is the wiretap charge under § 2232(c). That statute provides:

> Whoever, having knowledge that a Federal ... officer ... has applied for authorization ... to intercept a wire ... commu-

nication, in order to obstruct ... *such interception*, gives notice or attempts to give notice of the possible interception to any person shall be fined ... or imprisoned....

18 U.S.C. § 2232(c) (emphasis added). The Supreme Court's construction of the statute in its *Aguilar* opinion is:

> [T]he defendant must intend to obstruct the interception made pursuant to the *application or authorization of which he has the knowledge* required by the first clause [of the statute].

*United States v. Aguilar*, — U.S. —, —, 115 S.Ct. 2357, 2364, 132 L.Ed.2d 520 (1995) (emphasis added).

The indictment charged that:

> On or about February 6, 1988, in the Northern District of California, defendant, ROBERT P. AGUILAR while a United States District Judge, *having knowledge* that a Federal investigative officer had *applied* to the United States District Court for the Northern District of California for authorization *to intercept wire communications of Abe Chapman*, and in order to obstruct, impede, and prevent such interception, gave notice and attempted to give notice of the possible interception to Abe Chapman. In violation of Title 18, United States Code, Section 2232(c).

(emphasis added). The Government acknowledges that it had the burden to prove that the appellant had knowledge of an application to intercept Chapman's wire communications as an essential element of the crime charged. This knowledge is what the indictment charged, what the Government sought to prove throughout the trial, and what the Government has argued throughout the proceedings in this court was necessary for conviction. It is the validity of the instruction given to the jury on this element of the crime that is our major concern in the appeal now before us.

## II.

### *VALIDITY OF INSTRUCTION*

The instruction given by the district court on the knowledge element of the crime was as follows:

[Section 2232(c) of Title 18] has a number of elements that must be proven before the defendant can be found guilty. The first is that the defendant had knowledge that authorizations to conduct electronic surveillance of Abe Chapman had been applied for.

Knowledge of a fact, members of the jury, means that you're satisfied from the evidence that he knew it or knowledge of the existence of a particular circumstance may be satisfied by proof that the defendant was aware of a high probability of the existence of that circumstance. Unless you find from the evidence that the defendant actually believed that the circumstance did not exist.

So in order to determine whether or not the evidence has satisfied the element that the defendant had knowledge of an alleged—and that, of course, must be proven there was an application for electronic surveillance on Abe Chapman's conversations, you should determine from the evidence whether you believe that an application had been applied for and *whether or not you believe that defendant was aware, actually knew, or was aware of a high probability that it existed.* Or to the contrary whether you find it was his belief, in fact, that the application had not been applied for.

(emphasis added). The "it" in the underlined sentence plainly refers to "an application for electronic surveillance on Abe Chapman's conversations."

The district court is not necessarily required to define knowledge for the reason that it is a common word which an average juror can understand and apply without further instruction. *See United States v. Chambers,* 918 F.2d 1455, 1460 (9th Cir.1990); *accord. United States v. Brown,* 33 F.3d 1014 (8th Cir.1994) (" 'Knowingly' is not a term of art."). Although a correct instruction may assist jurors in understanding knowledge, an incorrect instruction may dilute its meaning and permit a conviction without proof of guilt. Because the distinction between knowledge and lesser mental states such as

recklessness and negligence is subtle, we have reviewed knowledge instructions carefully.

In offering its instruction that it was only necessary to establish "a high probability of the existence of the fact in question" in order to satisfy the knowledge requirement, the Government cited *United States v. Jewell,* 532 F.2d 697 (9th Cir.), *cert. denied,* 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976). In that case, we approved an exception to the requirement of "actual knowledge" when there is evidence that the defendant has his suspicion aroused, but then he deliberately omits making an inquiry in order to avoid having actual knowledge. A deliberate ignorance instruction was given as an alternative to finding "actual knowledge." We stated that "[t]he substantive justification for the rule is that deliberate ignorance and positive knowledge are equally culpable." *Jewell,* 532 F.2d at 700.[1]

We quoted several learned treatises and noted:

This is the analysis adopted in the Model Penal Code. Section 2.02(7) states: "When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is aware of a high probability of its existence, unless he actually believes that it does not exist." As the comment to this provision explains, "Paragraph (7) deals with the situation British commentators have denominated 'wilful blindness' or 'connivance,' the case of the actor who is aware of the probable existence of a material fact but does not satisfy himself that it does not in fact exist."

*Id.* (footnote omitted). We thereupon affirmed the conviction of the defendant who was paid for driving 110 pounds of marijuana across the border in a concealed secret compartment between the trunk and the rear seat of the car that he was aware of but chose not examine the contents.

Then–Circuit Judge Kennedy, joined by three members of the court, stated in dissent:

---

1. This type of instruction is frequently referred to as a "deliberate ignorance," "deliberate blindness," "deliberate avoidance," or a *Jewell* instruction.

[T]he jury instruction clearly states that Jewell could have been convicted even if found ignorant or "not actually aware" that the car contained a controlled substance. This is unacceptable because true ignorance, no matter how unreasonable, cannot provide a basis for criminal liability when the statute requires knowledge. A proper jury instruction based on the Model Penal Code would be presented as a way of defining knowledge, *and not as an alternative to it.*

*Id.* at 707 (footnote omitted) (emphasis added).

■ The serious defect in the instruction given by the district court in this case is that "high probability of the awareness of the circumstance" was given as an alternative to actual ·knowledge without the requirement that there be evidence of willful blindness. It is apparent that the district judge gave two alternatives by which it could find the element of knowledge. One alternative was whether the defendant *was aware, actually knew,* that an authorization to conduct surveillance of Abe Chapman 'had been applied for. The other alternative was that the defendant was *aware of a high probability* of the existence of that circumstance. These two alternatives were connected by the disjunctive "or." Thus, the jury was able to find that the element of knowledge was satisfied not only if it found that the appellant was *aware* of the circumstance, that he *actually knew* it, but also if it found that he did not actually know it, but he was *aware of a high probability* that it existed. This allowed the jury to convict the appellant on a finding of less than actual knowledge or awareness.

The Government concedes that no evidence was presented or argument made that there was willful blindness in this case. The instruction given was contrary to the majority opinion in *Jewell* in that the requirement of willful blindness was omitted from the instruction and there was no evidence of willful blindness. The instruction is also contrary to the dissent in that "high probability of awareness" was offered as an alternative to actual knowledge.

Our circuit has continued to follow the majority opinion in *Jewell,* utilizing Model Penal Code § 2.02(7) only in situations where the evidence justifies an argument of willful blindness. It has never been used in this circuit as a definition of actual knowledge.

In *United States v. Pacific Hide & Fur Depot, Inc.,* 768 F.2d 1096 (9th Cir.1985), an instruction had been given utilizing the wording of Model Penal Code § 2.02(7) with the "deliberate avoidance" language included. The opinion of the court, written by then-Circuit Judge Kennedy, provided an extensive review of the case law of our circuit and stated:

The use of the so-called *Jewell,* or deliberate avoidance instruction, on the facts of this case was erroneous and requires reversal.

We first authorized the use of a deliberate avoidance instruction in the context of a prosecution of importation of controlled substances, and subsequent cases approving its use have presented similar factual patterns. We have also permitted the use of a *Jewell* instruction outside the context of a drug prosecution.

In light of the evidence adduced by the prosecution in this case, however, the district court's decision to instruct the jury on the doctrine of deliberate avoidance was error. A *Jewell* instruction is properly given only when defendant claims a lack of guilty knowledge and the proof at trial supports an inference of deliberate ignorance. It is not enough that defendant was mistaken, recklessly disregarded the truth, or negligently failed to inquire. Instead, the government must present evidence indicating that defendant purposely contrived to avoid learning all of the facts in order to have a defense in the event of subsequent prosecution. Absent such evidence, the jury might impermissibly infer guilty knowledge on the basis of mere negligence without proof of deliberate avoidance.

In the case before us, the government has presented insufficient evidence of willful blindness on the part of defendants to warrant a *Jewell* instruction.

*Pacific Hide,* 768 F.2d at 1098–99 (citations omitted).

■ It is clear from our circuit authority that Model Penal Code § 2.02(7) has been utilized only when there is evidence of deliberate blindness and only when that aspect is incorporated into the instruction. In this case, the authority offered by the Government for the instruction was *United States v. Jewell.* It is clear that the instruction given is contrary to *Jewell.* The Government no longer relies on that authority. In earlier briefs, the Government also relied on the legislative history of section 2232(c) as justification for the instruction. It has also abandoned that argument. The Government now rests its argument solely on the proposition that Model Penal Code § 2.02(7) can be used to define actual knowledge even when there is no proof of willful blindness.

Even if we were to accept the Government's argument, it does not apply in this case. Section 2.02(7) was given as an *alternative* to actual knowledge, not a definition of actual knowledge.

The jury could reasonably have construed the instruction as telling them that something less than actual knowledge satisfies the requirement. As we have discussed, there is no authority for giving a section 2.02(7) high probability instruction as an *alternative* to actual knowledge. Indeed, it directly conflicts with both the majority and the dissent in *Jewell* and with the subsequent authority of this circuit. We conclude that the instruction is erroneous.

### III.

#### WAS THE ERROR HARMLESS?

■ Whether the giving of an erroneous instruction regarding an element of an offense requires reversal, regardless of the extent of inculpatory evidence, depends on the nature of the error and whether there is an error-free finding elsewhere in the jury's determinations. *Carella v. California,* 491 U.S. 263, 271, 109 S.Ct. 2419, 2423–24, 105 L.Ed.2d 218 (Scalia J., concurring); *see also Sullivan v. Louisiana,* 508 U.S. 275, 279–81, 113 S.Ct. 2078, 2082, 124 L.Ed.2d 182 (1993). As to what is ordinarily the principal question—the nature of the error—we must determine how critical that error is to the jury's determinations, not on the basis of what the jury actually did (which we cannot know) but on the basis of what it might have done when it followed the court's instructions, as we must presume it did. *Yates,* 500 U.S. at 403, 111 S.Ct. at 1892–93. At one end of the scale, the error will not be prejudicial because it is de minimis or it may even benefit the defendant. At the other, a careful examination of the instruction may reveal that it is at least as likely that the jury convicted the defendant without finding the existence of a requisite element as it is that it convicted him lawfully. In between, are cases in which the error in the instruction is not central to the finding of a requisite element or affords only some lesser possibility of an unlawful conviction.

■ We need not engage in any line-drawing or any hypothesizing as to what test or standard is appropriate in cases involving circumstances not presented by this case. Here, it is clear from the face of the instruction that the error was central to the jury's determination regarding the existence of an essential element of the offense. The jury could as readily have convicted the defendant on the basis of the error, the improper, *Jewell*-like, alternative definition of knowledge (and thus have found him guilty *without* finding a requisite element of the offense) as on the basis of the other part of the instruction that required a finding of the facts necessary to establish the element. Thus, we simply cannot tell whether the jury found the facts necessary to support a conviction. Moreover, in this case, there is no other basis for determining that the jury found such facts. Under these circumstances we are not permitted to guess what the jury might actually have done, to speculate on what it would have done under a proper instruction, or to examine the evidence to determine how inculpatory it may be. *See U.S. v. Gaudin,* 28 F.3d 943, 951 (9th Cir.1994) ("Harmless error analysis focuses on the basis on which the jury actually rested its verdict.") (internal quotations omitted). Rather, we are compelled to reverse. Finally, the evidence in this case, which is set forth in our prior

opinion, 21 F.3d 1475 (9th Cir.1994) (en banc), is not "so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the [error]." *Yates v. Evatt,* 500 U.S. 391, 405, 111 S.Ct. 1884, 1893, 114 L.Ed.2d 432 (1991); *see also United States v. Sanchez–Robles,* 927 F.2d 1070, 1075 (9th Cir.1991).

## IV.

### SUFFICIENCY OF THE EVIDENCE

The appellant also contends that the, evidence was insufficient to convict him, even under an appropriate instruction. We must reach this issue even though we reverse the conviction. "Because an appellate reversal of a conviction on the basis of insufficiency has the same effect as a judgment of acquittal, the Double Jeopardy Clause would preclude retrial." *United States v. McKoy,* 771 F.2d 1207, 1215 (9th Cir.1985). Under a correct instruction, there was sufficient evidence from which a jury could have rendered a verdict of guilty on the section 2232(c) charge.

## V.

### CONCLUSION

We conclude that the district court's instruction on the knowledge element of the crime was erroneous and that the error was not harmless. We, therefore, reverse the wiretap conviction and remand to the district court for proceedings consistent with this opinion. Because of the reversal and remand, we need not reach the sentencing issue raised in the Government's cross-appeal.

**REVERSED and REMANDED.**

FERNANDEZ, Circuit Judge, dissenting:

I see nothing bizarre or unconstitutional about breaking a single concept like "knowledge" into two components, such as "actual" (knowledge) and "aware of a high probability" (knowledge). Neither is any less than knowledge itself. If the Legislature declared it was a crime to injure a mammal, I would see no violation of a defendant's rights if the court were to tell the jury that injuring a dog (mammal) or a cat (mammal) violated the statute. So, too, with a taxonomy of knowledge.

Actual knowledge is a rather unusual thing. Perhaps we actually *know* there cannot be an antinomy—"X" is and simultaneously is not. Perhaps we also actually *know* that we are feeling an emotion. But there is little else that we actually know. Most usually what we have is pieces of information that make it highly probable that a particular fact or circumstance exists.

This case is a fine illustration of that. Judge Aguilar was told by Chief Judge Peckham that Chapman's name had come up in connection with a wiretap application. From that Judge Aguilar, not surprisingly, deduced that a wiretap had been applied for and that Chapman was subject to a wiretap—at least he might well be intercepted on one. No doubt Judge Aguilar deduced that from his knowledge of the law and of the Chief Judge. Certainly he thought that he knew it, as is shown by his notice to Chapman and his later conversation with Solomon. Was that actual knowledge in other than lay terms? Probably not. But it surely was a set of circumstances from which a jury could find that Judge Aguilar was aware of a "high probability." It was what most people would intuit as and call knowledge without further philosophical lucubration, although philosophers might well call it "high probability" rather than "actual." The fact that the district court could have commonsensically left it at that is the reason I do not like the extended taxonomy used by the court, but I fail to see how Judge Aguilar was hurt. On either theory, the evidence showed that he had knowledge.

If the evidence did not show knowledge, then what *is* the actual knowledge that Judge Aguilar claims is the only proper showing of "knowledge" itself? Well, suppose he had seen a document labeled "Wiretap Application" and the document read like a wiretap application. Would he then have actual knowledge? On his approach, I suppose not, for he would surely not actually know that it was a true application. He would not know that anyone with authority to do so had

applied or even that the document was what it appeared to be. If the document had a court file stamp on it, would that be actual knowledge? Why, no, for he surely would not actually know that it was really a court filing stamp that was on the document, or that a proper official had placed the stamp there. And so on. Each new perception would merely lend more confidence to a determination that he had knowledge; each would merely increase confidence that he was aware of a "high probability."

Again, I hold no brief for the instruction at hand because I think we should avoid attempts to have jurors pursue such arcane subjects as "What Is Knowledge?" while they are in the midst of deciding cases. *Cf. United States v. Chambers*, 918 F.2d 1455, 1460 (9th Cir.1990) (need not define "knowingly" for the jury—jurors understand what it is). However, I do not think that Judge Aguilar was harmed one whit. If, indeed, the jurors merely found beyond a reasonable doubt that Judge Aguilar was aware of a high probability of the existence of the wiretap application, they found enough to determine that he had fulfilled an element of this crime—he had knowledge.

By the way, the instruction was nothing like a deliberate ignorance instruction. *See United States v. Jewell*, 532 F.2d 697 (9th Cir.) (en banc), *cert. denied*, 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976). The *Jewell* instruction was considerably less efficacious and considerably more confusing than the one given here, as a reading of the dissent in that case demonstrates. *Id.* at 705–08 (Kennedy, J., dissenting). My agreement with that dissent does not undermine this one. Here the jury was instructed on knowledge itself; there, as the dissent pointed out, the jury was instructed on what amounted to something else. *Id.* at 707. Still, we did find that simulacrum of a knowledge instruction to be sufficient. We should not now reject the real thing with a vehemence that requires reversal of Judge Aguilar's conviction.

Finally, a word about the phrase "unless you find that defendant actually believed that the circumstance did not exist." That, too, did not harm Judge Aguilar. If anything, it helped him because, even though any normal creature would have knowledge under the circumstances, the jury was told that if Judge Aguilar actually believed that the wiretap application did not exist, he could not be said to have knowledge of it. Had the district court simply left the word knowledge alone, this added complication could have been avoided—that is, the "belief" part of the knowledge equation would not have been mentioned at all. Nevertheless, the phrase deflected any suggestion that Judge Aguilar had knowledge because he should have known.

I will agree that my misgivings about the form of the instruction might well be translated into a determination that it was a mistake to give it. In fact, I do think it was a poor instruction, that it should not have been given, and that it should not be given, even if it be philosophically correct. That being said, I see the error as harmless.

Certainly the error is not the kind that the Supreme Court was worried about in *Sullivan v. Louisiana*, 508 U.S. 275, 278–81, 113 S.Ct. 2078, 2081–82, 124 L.Ed.2d 182 (1993). The jury was not permitted or induced to find guilt on a standard less than beyond a reasonable doubt. The instruction was not even a misstatement of the law. It was simply an overly complex (even awkward) way to instruct jurors. It was imperfect, but "[e]ven imperfect jury instructions will not form the basis for reversing a conviction unless they constitute an abuse of discretion." *United States v. Joetzki*, 952 F.2d 1090, 1095 (9th Cir.1991); *see also United States v. Nordbrock*, 38 F.3d 440, 445–46 (9th Cir.1994); *United States v. Koon*, 34 F.3d 1416, 1449 (9th Cir.1994), *cert. granted in part*, —— U.S. ——, 116 S.Ct. 39, 132 L.Ed.2d 920 (1995). In other words, the error I perceive did not rise to the level of constitutional error. That obviates any need to decide what kind of constitutional error it was. The imperfection was there, but it was entirely harmless to Judge Aguilar's cause. The district court did not abuse its discretion. *Id.*

Thus, I respectfully dissent.