[No. 37218-1-I.    Division One.    June 9, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES
CHARLES VANOLI, *Appellant*.

*Irwin H. Schwartz* and *Law Office of Irwin H. Schwartz,* for appellant.

*William H. Hawkins, Prosecuting Attorney,* and *John H. Breckenridge, Deputy,* for respondent.

KENNEDY, A.C.J. — James Vanoli appeals his conviction and sentence for three counts of delivering LSD to minors within 1000 feet of a designated school bus stop. Vanoli contends: (1) that the jury was improperly instructed on the definition of knowledge under *United States v. Aguilar,* 80 F.3d 329 (9th Cir. 1996); (2) that the trial court erroneously determined that the first-offender waiver was unavailable in his case; (3) that his offender score was

improperly calculated because his three offenses constituted the same criminal conduct; (4) that the age and school zone sentence enhancement statutes unconstitutionally revise the delivery statute; (5) and that the court erred in imposing a sentence longer than the 120-month statutory limit by imposing both the statutory maximum term and 12 months of community supervision.[1] Finding no error, we affirm.

I

Guilty knowledge, i.e., knowledge that the drug being delivered is illegal, is an essential element of the crime of delivery of a controlled substance. *State v. Johnson*, 119 Wn.2d 143, 147, 829 P.2d 1078 (1992). Vanoli contends that the trial court's jury instruction defining knowledge provides an alternative definition of knowledge that allows conviction based on probabilities, such as what a reasonable person would have known, and is, therefore, impermissible under *United States v. Aguilar*, 80 F.3d 329. The jury was given the following definition of knowledge, taken from WPIC 10.02:

> A person knows or acts knowingly or with knowledge when he or she is aware of a fact, circumstances or result which is described by law as being a crime, whether or not the person is aware that the fact, circumstance or result is a crime.
>
> If a person has information which would lead a reasonable person in the same situation to believe that facts exist which are described by law as being a crime, the jury is permitted but not required to find that he or she acted with knowledge.

Clerk's Papers at 49. Vanoli did not object to the instruction at trial. However, an instructional error affecting a constitutional right may be raised for the first time on appeal. RAP 2.5(a)(3). Under Washington's statutory scheme creating a hierarchy of mental states for crimes of increasing culpability, where knowledge is required to be proven

---

[1]Vanoli's remaining contentions are treated in the unpublished portion of this opinion.

the jury must find actual, subjective knowledge; an instruction that effectively redefines knowledge to mean negligent ignorance violates due process. *State v. Shipp*, 93 Wn.2d 510, 515-16, 610 P.2d 1322 (1980). Accordingly, we will review the assignment of error.

■ The validity of jury instructions defining knowledge based upon a reasonable person standard was first considered by the Washington Supreme Court in *Shipp*. Under *Shipp*, a knowledge instruction passes constitutional muster if it permits, but does not compel, the jury to infer that the defendant acted with knowledge:

> The comparison to the ordinary person has been imported into many legal definitions of knowledge to make it clear to the jury what level of circumstantial evidence is sufficient for it to conclude that the defendant had actual knowledge. But the comparison creates only an inference. The jury must still find subjective knowledge.

*Shipp*, 93 Wn.2d at 517 (citation omitted). Following *Shipp*, the Supreme Court has consistently upheld the validity of the instruction used in this case. *See State v. Johnson*, 119 Wn.2d 167, 174, 829 P.2d 1082 (1992); *State v. Hoffman*, 116 Wn.2d 51, 107, 804 P.2d 577 (1991), *aff'd sub nom. McGinnis v. Blodgett*, 67 F.3d 307 (9th Cir. 1995), *cert. denied*, 516 U.S. 1160, 116 S. Ct. 1046 (1996); *State v. Leech*, 114 Wn.2d 700, 709-10, 790 P.2d 160 (1990). Vanoli contends that the Ninth Circuit's opinion in *Aguilar* is inconsistent with *Shipp* and its progeny and compels reversal in this case. In *Aguilar*, the Ninth Circuit examined the validity of an instruction that permitted the jury to find that the defendant had knowledge of a fact if the jury believed that the defendant was "aware of a high probability" that the fact existed. *Aguilar*, 80 F.3d at 331. The *Aguilar* court found the instruction improper, holding that the "high probability" language was only appropriate in cases of "deliberate ignorance," i.e., where there was evidence that the defendant deliberately avoided gaining actual knowledge of a fact despite having his or her suspicions aroused.

*Id.* Because there was no such evidence in *Aguilar*, the court reversed. *Id.* at 331-32.

Contrary to Vanoli's contention, the *Aguilar* opinion is not inconsistent with the Washington cases that have upheld the validity of the instruction in this case. The instruction at issue in those cases, and here, did not permit the jury to find knowledge based on a "high probability" of the existence of a fact, as did the instruction in *Aguilar*. Instead, the instruction required the jury to find that Vanoli acted with actual, subjective knowledge as required by *Shipp*. The second paragraph of the instruction does not provide an alternative definition of knowledge; rather, it permits but does not require the jury to infer actual, subjective knowledge if the defendant has information that would lead a reasonable person in the same situation to believe that facts exist that are described by law as being a crime.

## II

■ At sentencing, defense counsel requested that the trial court apply the first-offender waiver. The Department of Corrections presentence report stated that Vanoli was eligible for the first-offender waiver, but recommended against it. The judge, in passing sentence, stated:

> And I . . . think of what a harsh sentence the standard sentence range is, and then I look at the first-time offender [*sic*] which, frankly, I am not too sure even applies here. Perhaps it would. But I can't really feel that the legislature — and everyone should be aware of the fact that it is the legislature who puts down the policy and changes the sentencing guidelines and decides one year they're going to be tough on juveniles and two years later, they're focusing on something else. And it's up to the courts to interpret the law that the legislature passes. And it's not up to the courts at this level to create policy. And, therefore, the article which was submitted by the defense regarding sentencing and drug offenses and nonviolent offenders and first-time offenders is very interesting, but I feel it is more properly directed to legislators because, as I said, the Court interprets what laws

are made by other people in our state seat of power in Olympia.

Report of Proceedings 96 (Aug. 21, 1995). The judge imposed the 120-month standard range sentence recommended by the State, citing as factors in her decision that the crime was committed for monetary gain, involved minors and was committed within a school zone. Vanoli contends that the court erred in ruling that the first-offender waiver was not available in his case. Although Vanoli received a sentence at the high end of the standard range, we agree that the question of whether the first-offender waiver was available is reviewable under *State v. Mail*, 121 Wn.2d 707, 854 P.2d 1042 (1993), in that Vanoli contends that the trial court made a legal error in determining that the waiver was not available.

■ ■ The trial court's doubt over whether the first-offender waiver was available in Vanoli's case was well-founded. Notwithstanding the erroneous conclusion contained in the presentence report, the waiver was not available in this case. RCW 9.94A.030(22)(a) specifically excludes from the definition of "first-time offender" anyone convicted of "selling for profit . . . any controlled substance . . . classified in schedule I, RCW 69.50.204." LSD is classified in schedule I as a controlled substance. RCW 69.50.204(c)(13). The trial court's finding that Vanoli sold the LSD for profit has not been challenged, and is a verity for purposes of this appeal. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). Accordingly, the first-offender waiver was not available in Vanoli's case.

### III

■ Vanoli contends that the trial court erred in calculating his offender score because his convictions involved the same criminal conduct.

[T]o constitute the "same criminal conduct" for purposes of determining an offender score at sentencing, . . . crimes must involve: (1) the same criminal intent; (2) the same time and

place; and (3) the same victim. If any one of these elements is missing, multiple offenses cannot be considered to be the same criminal conduct and they must be counted separately in calculating the offender score.

*State v. Maxfield*, 125 Wn.2d 378, 402, 886 P.2d 123 (1994). The trial court's determination of whether the same criminal conduct is involved will be reviewed for abuse of discretion and misapplication of the law. *Id.*

Vanoli sold liquid LSD to three 17-year olds for $5 per drop. Each of the sales occurred in Vanoli's residence over a span of only a few minutes, as each of the teenagers, one after the other, entered Vanoli's bedroom, received a drop of liquid LSD on his or her tongue in exchange for the $5 payment, and then returned to the living room of the home. Each of the crimes had identical legal elements and identical criminal objectives—the sale of LSD—although three separate transactions were involved. Relying on *State v. Vike*, 125 Wn.2d 407, 885 P.2d 824 (1994) (simultaneous possession of two different controlled substances encompassed same criminal conduct); *State v. Garza-Villarreal*, 123 Wn.2d 42, 864 P.2d 1378 (1993) (simultaneous delivery of two different drugs to same undercover officer encompassed same criminal conduct); and *State v. Maxfield*, 125 Wn.2d 378 (manufacturing marijuana and possession of marijuana with intent to sell it not same criminal conduct as different objectives involved), Vanoli argues that successive deliveries of exactly the same drug at the same time and place necessarily involve the same criminal objective—the sale of that drug. Vanoli argues that *State v. Lewis*, 115 Wn.2d 294, 797 P.2d 1141 (1990) (deliveries at same location on different date not same criminal conduct; sales did not further one another and offenses not part of recognizable scheme or plan); *State v. Henderson*, 64 Wn. App. 339, 344, 824 P.2d 492 (two counts of delivery of cocaine within an hour not same criminal conduct: break of some significant time occurred between first and second sales; earlier sale did not further second sale; each sale independently ac-

complished upon completion; no continuing sequence of conduct), *review denied*, 119 Wn.2d 1004 (1992); and *State v. Boze*, 47 Wn. App. 477, 735 P.2d 696 (1987) (three deliveries of cocaine to same agent at same location, separated by a period of weeks, not same criminal conduct) are all distinguishable, in that the successive transactions in those cases were separated in time and there was no continuing sequence of conduct. Pointing to *Vike*, 125 Wn.2d at 410, and to *Garza-Villarreal*, 123 Wn.2d at 47, Vanoli also argues that the victim of multiple drug delivery crimes is always the same: the public at large. Finally, Vanoli points out that the Washington delivery statute includes as "deliverers" both those who knowingly buy and those who knowingly sell controlled substances, so that both parties to an illegal drug transaction are participants and both can be convicted of delivery. *See State v. Ramirez*, 62 Wn. App. 301, 308, 814 P.2d 227 (1991). Vanoli argues that, regardless of age, both parties to such transactions are participants and that neither party can be a victim.

We disagree with Vanoli's analysis on three grounds. Although each of these deliveries occurred, for all practical purposes, at the same time and place, and although the same drug was involved in each transaction, we disagree that each crime had the same criminal objective because there were three separate transactions with three separate buyers. Each transaction had as its objective the sale of LSD to a different purchaser. Furthermore, to the extent that the public at large may be the only victim of any particular illegal drug sale, the fact remains that here, the public was victimized three separate times— once with each separate transaction. Finally, the purpose of the age enhancement statute, RCW 69.50.406, is to punish not just deliveries but deliveries to *minors*. The enactment of this special statute to separately address deliveries of drugs to minors, and the statute's provision for enhanced penalties for such deliveries, demonstrates the Legislature's recognition that minors are indeed victims,

as well as participants, when they are given illegal drugs. Because Vanoli delivered to three different persons, thus victimizing the public on three distinct occasions, and for the additional reason that those three persons were all minors, and thus victims in their own right, Vanoli's crimes did not involve the same criminal conduct.

## IV

Vanoli contends that the age enhancement statute, RCW 69.50.406, and the school zone enhancement statute, RCW 69.50.435, amend or revise the delivery statute, RCW 69.50.401, without setting forth the latter statute in full, in violation of WASH. CONST. art. 2, § 37, which provides: "No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length."

RCW 69.50.401 (delivery statute) and 69.50.406 (age enhancement statute) were both originally enacted in 1971 as part of the Uniform Controlled Substances Act. Both were amended in 1987 as part of the Alcohol and Substance Abuse Act. RCW 69.50.401 was again amended in 1989 with the passage of the Omnibus Alcohol and Controlled Substances Act. Within that same act, RCW 69.50.435 (school zone enhancement statute) was also adopted. The purposes of WASH. CONST. art. 2, § 37 are: (1) to avoid having separate but related provisions scattered through legislative volumes, and (2) to ensure that legislators are aware of the nature and effect of amendments they make. *See Weyerhaeuser v. King County*, 91 Wn.2d 721, 731, 592 P.2d 1108 (1979). In this case, all three acts fall within the same legislative volume, indeed within the same legislative chapter, satisfying the first purpose of WASH. CONST. art. 2, § 37. In addition, because the three statutes were either enacted at the same time or amended and enacted at the same time, the Legislature must have been aware of the nature and effect of its actions, satisfying the second purpose of WASH. CONST. art. 2, § 37.

Moreover, both of these sentence enhancement statutes are clearly reference statutes, and as such are not within the restriction contemplated by the constitutional provision. *See State v. Rasmussen*, 14 Wn.2d 397, 402, 128 P.2d 318 (1942). Statutes which refer to other statutes and make them applicable to the subject of the legislation are called reference statutes, the object of which is to incorporate into the acts of which they are a part the provisions of other statutes by reference and adoption. The age enhancement statute provides for a term of imprisonment up to twice that authorized by RCW 69.50.401 whenever any person 18 years of age or older distributes a Schedule I controlled substance to a person under 18 years of age who is at least 3 years younger than the defendant. RCW 69.50.435 similarly provides for a term of imprisonment up to twice that authorized elsewhere in ch. 69.50 RCW, specifically excluding, however, RCW 69.50.406—the age enhancement statute. RCW 69.50.435(a). As observed by the *Rasmussen* court, the constitutional provision was designed in part to keep legislators from being deceived as to whether they have in fact amended the law. *Rasmussen*, 14 Wn.2d at 401. Here, the Legislature was clearly not confused or deceived. It intended to authorize up to twice the term of imprisonment authorized under RCW 69.50.401 for certain deliveries to minors; it did not intend to authorize up to twice the already-doubled age enhancement penalty for deliveries to minors that take place in a school zone, although deliveries that take place in a school zone to anyone are, themselves, subject to terms of imprisonment up to twice those authorized by RCW 69.50.401, regardless of the age of the recipient. The Legislature having thus conclusively demonstrated its lack of confusion with respect to these enhanced penalty statutes, we are persuaded that these particular reference statutes violate none of the constitutional purposes with which we are concerned.

Vanoli appears to assume, without citation to authority, that any penalty enhancement statute automatically amends or revises other statutes to which it may be ap-

plied. We find no authority for this assumption. To the contrary, in *State v. Frazier*, 81 Wn.2d 628, 632, 503 P.2d 1073 (1972), our Supreme Court rejected a contention that the statute providing for an additional penalty where second degree assault was committed by a person who was armed with a deadly weapon violated this same constitutional provision by amending the assault statute without setting forth that statute in full. *See also In re Personal Restraint of Lord*, 123 Wn.2d 296, 325, 868 P.2d 835 (death penalty statute defining aggravated murder as "first degree murder as defined by RCW 9A.32.030(1)(a) as now or hereafter amended" plus one or more specified aggravating factors does not violate CONST. art. 2, § 37 merely because it incorporates premeditated murder statute by reference), *decision clarified*, 123 Wn.2d 737, *cert. denied*, 513 U. S. 849 (1994).

In sum, we find no violation of the constitutional mandate in this case.

## V

Vanoli contends that because his 120-month prison sentence and 12-month community supervision sentence total 132 months, exceeding the statutory maximum sentence of 120 months, his sentence must be vacated. "[A] court may not impose a sentence providing for a term of confinement or community supervision or community placement which exceeds the statutory maximum for the crime[.]" RCW 9.94A.120(13).[2]

The Sentencing Reform Act provides, in pertinent part:

> When a court sentences a person to . . . the custody of the department of corrections . . . for . . . any felony offense under chapter 69.50 . . . the court shall in addition to the other terms of the sentence, sentence the offender to a one-year term of community placement[.] . . . When the court sentences an offender under this subsection to the statutory

---

[2]At the time Vanoli was sentenced, this section was numbered as RCW 9.94A.120(11).

maximum period of confinement then the community placement portion of the sentence shall consist entirely of such community custody to which the offender may become eligible[.]

RCW 9.94A.120(9)(a).[3] RCW 9.94A.150(1) provides a mechanism by which prisoners can earn early release credits for good behavior and performance. RCW 9.94A.150(2) provides that drug offenders under RCW 69.50, such as Vanoli, "may become eligible, in accordance with a program developed by the department, for transfer to community custody status in lieu of earned early release time pursuant to subsection (1) of this section[.]"

Under this statutory scheme, if Vanoli earns early release credits, he will be released from prison sooner than in 10 years, at a date determined by the number of early release credits he has earned. Upon his release, he will then be placed on 12 months of community custody pursuant to RCW 9.94A.150(2). If, on the other hand, Vanoli earns no early release time, he will be released after serving 120 months with no further obligation. Under neither of these scenarios will Vanoli serve more than the statutory maximum sentence of 120 months. His contention therefore fails.

We affirm Vanoli's conviction and sentence.

The remainder of this opinion has no precedential value and will not be published in the Washington Appellate Reports but will be filed for public record in accordance with the rules governing unpublished opinions.

BECKER and COX, JJ., concur.

Review denied at 133 Wn.2d 1022 (1997).

---

[3] At the time Vanoli was sentenced, this section was numbered as RCW 9.94A.120(8)(a).