[No. 33751-7-II.   Division Two.   January 17, 2007.]

THE STATE OF WASHINGTON, *Respondent*, v. GAREN MARK
GERDTS, *Appellant*.

*Manek R. Mistry* and *Jodi R. Backlund* (of *Backlund & Mistry*), for appellant.

*Jeremy R. Randolph, Prosecuting Attorney*, and *J. Andrew Toynbee, Deputy*, for respondent.

¶1 PENOYAR, J. — Garen Mark Gerdts appeals his conviction of second degree malicious mischief, arguing that the knowledge instruction in the case (1) created an unlawful mandatory presumption relieving the State of its burden of proving every element of the offense and (2) was confusing and misleading because it did not follow the exact language of RCW 9A.08.010(1)(b). He also argues that he received ineffective assistance of counsel based on his trial counsel's failure to object to the challenged instruction and prosecutorial misconduct. We affirm.

FACTS

¶2 The State charged Gerdts with second degree malicious mischief. Gerdts pleaded not guilty, and the case went to a jury trial.

¶3 According to the State's witnesses, when Michelle and Marcus Sorlie arrived at the 12-Step Club,[1] they heard a scraping noise and simultaneously observed Gerdts walking next to a van; he appeared to be running his hand along the side of the van. Although they did not know his name, the Sorlies were familiar with Gerdts because he frequented the club.

¶4 When Marcus Sorlie called out to Gerdts, Gerdts ran off quickly, joining another man who was walking down the street. Michelle Sorlie testified that although the other man could have just been walking down the street, it appeared to her that he was acting as a lookout for Gerdts.

¶5 Although the Sorlies did not see anything in Gerdts's hand as he was walking along the side of the van, when they approached the van, they noticed a deep a scratch down the side of the van where Gerdts had been; there were metal or paint curls around the van, some still attached to the van.

¶6 The Sorlies went into the club and asked the patrons whether anyone had parked a van outside. After determining that Denise Rhodes owned the van and telling her about the damage, someone called the police. The Sorlies were also familiar with Rhodes from the club, in part because she had been before the board on disciplinary matters. At trial, Rhodes, Gerdts's ex-roommate, confirmed that it was her van that had been scratched and testified that the van was not scratched when she went into the club that night.

¶7 When the police arrived at the club, they found the van scratched and observed metal shavings on the ground near the van. Rhodes showed them a photograph of Gerdts, and the officers later contacted Gerdts on the street and detained him.

---

[1] According to the Sorlies, the 12-Step Club is a social club for people involved in 12-step programs that provide meeting rooms for 12-step programs and a safe and sober place for those involved in 12-step programs to socialize. Michelle Sorlie was the president of the board of directors for the club; Marcus, a social worker and assistant counselor at Maple Lane School, was a club member and former board member.

¶8 According to one of the officers, after he advised Gerdts of his *Miranda*[2] rights and told him generally why he was being detained, Gerdts responded that he was not the one who keyed the van. The officer testified that when Gerdts made this statement, he had not yet told Gerdts that a van was involved.

¶9 Gerdts testified in his own defense. He denied damaging the van and asserted that he was with friends inside the club when the Sorlies observed the man near the van. He also asserted that the officer told him a van was involved before he responded to the officer. In addition, although he denied being angry with her, he described an antagonistic relationship with Rhodes. Several of Gerdts's friends also testified that they were with him in the club that evening. His friends also testified that they did not like Rhodes, primarily because of how she had behaved toward Gerdts.

¶10 On cross-examination, the prosecutor asked Gerdts about his conversation with the officer who had detained him, specifically asking him whether there was any reason the officer would have made up his testimony:

Q   [PROSECUTOR]. And have you ever met Officer Gonzales before?

A   [GERDTS]. I've talked to him on the phone before this past incident before that, but I haven't met him before until the day I got arrested.

Q.   Do you know any reason why the officer would make stuff up?

A.   No.

Q.   So why do you think he testified that you said something about the van before he did?

[DEFENSE COUNSEL]: I'm going to object to the question. It calls for speculation as to why someone else said something.

THE COURT: I'll sustain that objection.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Report of Proceedings (Aug. 4, 2005) at 52. Despite sustaining the objection, there is nothing in the record showing that the trial court struck any of this testimony.

¶11 After both parties rested, the trial court instructed the jury. The record does not show any objections to the trial court's instructions.

¶12 Instruction 1 directed the jury to "disregard any evidence that was either not admitted or which was stricken by the court" and informed the jury that it was the "sole judge[ ] of the credibility of the witnesses and of what weight is to be given the testimony of each." Clerk's Papers (CP) at 2-3.

¶13 Instruction 4 defined second degree malicious mischief, stating, "A person commits the crime of malicious mischief in the second degree when he or she *knowingly and maliciously causes physical damage* to the property of another in an amount exceeding $250." CP at 7 (emphasis added). Instruction 5, the to-convict instruction, similarly required the jury to find that Gerdts "*caused physical damage* to the property of another in an amount exceeding $250" and that he "*acted knowingly and maliciously.*" CP at 8 (emphasis added).

¶14 Instruction 6, which followed WPIC 10.02,[3] defined knowledge as follows:

A person knows or acts knowingly or with knowledge when he or she is aware of a fact, circumstance or result *described by law as being a crime*, whether or not the person is aware that the fact, circumstance or result is a crime.

If a person has information which would lead a reasonable person in the same situation to believe that facts exist which are *described by law as being a crime*, the jury is permitted but not required to find that he or she acted with knowledge.

*Acting knowingly or with knowledge also is established if a person acts intentionally.*

CP at 9 (emphasis added).

---

[3] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.02, at 150 (2d ed. 1994) (WPIC).

¶15 The jury convicted Gerdts of second degree malicious mischief. Gerdts appeals.

## DISCUSSION

I. KNOWLEDGE INSTRUCTION

¶16 Gerdts first argues that jury instruction 6, which defined knowledge, (1) created an improper mandatory presumption, relieving the State of its burden of proving every element of the crime, and (2) was confusing and misleading because it did not follow the language of RCW 9A.08.010(1)(b). He also argues that his trial counsel was ineffective for failing to object to this instruction on these grounds.

A. Failure To Preserve the Issue Below

¶17 We recognize that the record does not show that Gerdts objected to the knowledge instruction on any ground. Generally, when there is no objection on the record, we will not consider an alleged instructional error unless the appellant first demonstrates that the error is a "manifest error affecting a constitutional right." RAP 2.5(a)(3). However, because Gerdts also argues that his trial counsel was ineffective for failing to object to this instruction on these grounds, we will address these arguments in that context regardless of whether they are manifest errors affecting a constitutional right.

B. Standards

¶18 To establish ineffective assistance of counsel, Gerdts must show that (1) his counsel's performance was deficient and (2) the deficient performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Gerdts must overcome a strong presumption that his counsel's representation was adequate and effective. *McFarland*, 127 Wn.2d at 335. And, to show prejudice, he must establish "there is

a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *McFarland*, 127 Wn.2d at 335. In this context, to establish deficient performance or prejudice, Gerdts must first show that if his counsel had objected to the knowledge instruction on these grounds, these objections would likely have been successful. Accordingly, we must examine the substance of Gerdts's arguments.

■ ¶19 "Jury instructions are 'sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law.'" *State v. Douglas*, 128 Wn. App. 555, 562, 116 P.3d 1012 (2005) (quoting *Bodin v. City of Stanwood*, 130 Wn.2d 726, 732, 927 P.2d 240 (1996)). We review challenged jury instructions de novo, examining the effect of a particular phrase in an instruction by considering the instructions as a whole and reading the challenged portions in the context of all the instructions given. *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995), *cert. denied*, 518 U.S. 1026 (1996).

■ ¶20 In a criminal case, the trial court must instruct the jury that the State has the burden to prove each essential element of the crime beyond a reasonable doubt. *Pirtle*, 127 Wn.2d at 656. It is reversible error if the instructions relieve the State of that burden. *Pirtle*, 127 Wn.2d at 656.

C. Mandatory Presumption

■ ¶21 Relying on our decision in *State v. Goble*, 131 Wn. App. 194, 126 P.3d 821 (2005), Gerdts argues that the last sentence of the knowledge instruction, which states, "Acting knowingly or with knowledge also is established if a person acts intentionally," CP at 9, created a mandatory presumption and allowed the jury to convict him if it found he "took any intentional act," thereby relieving the State of having to prove every element of the offense. Br. of Appellant at 4. He argues that, for example, this instruction would have allowed the jury to find he acted with knowl-

edge if he intentionally walked past the van, regardless of whether he knowingly damaged the van. This argument has no merit.

¶22 In *Goble*, we held that a knowledge instruction that stated " 'Acting knowingly or with knowledge also is established if a person acts intentionally' " was confusing because it potentially allowed the jury to find the defendant guilty of third degree assault against a law enforcement officer without having to find that the defendant knew the victim was a law enforcement officer performing his official duties if it found the defendant intentionally assaulted the victim.[4] *Goble*, 131 Wn. App. at 202-03 (emphasis omitted). We stated:

> We agree that the instruction is confusing and that the [challenged] portion of the instruction allowed the jury to presume Goble knew [the victim's] status at the time of the incident if it found Goble had intentionally assaulted [the victim]. *This conflated the intent and knowledge elements required under the to-convict instruction into a single element* and relieved the State of its burden of proving that Goble knew [the victim's] status if it found the assault was intentional.

*Goble*, 131 Wn. App. at 203 (emphasis added).

¶23 In contrast, here instructions 4 and 5 read as a whole clearly required the jury to find that Gerdts knowingly and maliciously *caused physical damage to the property of another*. Unlike the offense at issue in *Goble*, there was no second mens rea element to conflate. Accordingly, *Goble* is inapposite here and, because the substantive argument has no merit, Gerdts's counsel was not ineffective for failing to challenge the knowledge instruction on this ground.

---

[4] We note that in *Goble*, we treated the issue of whether the defendant had knowledge of the victim's status as a law enforcement officer as an element of third degree assault solely because the jury instructions in that case included this element and the law of the case doctrine required that we do so. *Goble*, 131 Wn. App. at 201. We did not then, nor do we now, intend to imply that knowledge of the victim's status is normally an element of third degree assault. *See Goble*, 131 Wn. App. at 201 n.2 (recognizing *State v. Brown*, 140 Wn.2d 456, 998 P.2d 321 (2000) clarified that knowledge of the victim's status is not an element of third degree assault).

### D. Failure To Follow Statutory Language

¶24 Gerdts next argues that the knowledge instruction was confusing and misleading because it did not follow the statutory language of RCW 9A.08.010(1)(b). Again, we disagree.

¶25 RCW 9A.08.010(1)(b) states:

A person knows or acts knowingly or with knowledge when:

(i) he is aware of a fact, facts, or circumstances or result *described by a statute defining an offense*; or

(ii) he has information which would lead a reasonable man in the same situation to believe that facts exist which facts are *described by a statute defining an offense.*

(Emphasis added.)

¶26 The knowledge instruction here did not use the phrase "described by a statute defining an offense." Instead, it provided:

A person knows or acts knowingly or with knowledge when he or she is aware of a fact, circumstance or result *described by law as being a crime*, whether or not the person is aware that the fact, circumstance or result is a crime.

If a person has information which would lead a reasonable person in the same situation to believe that facts exist which are *described by law as being a crime*, the jury is permitted but not required to find that he or she acted with knowledge.

CP at 9 (emphasis added).

¶27 In a somewhat convoluted argument, Gerdts claims that it is "nonsensical" for a "fact, circumstance or result" to be described by law as a crime. Br. of Appellant at 5. He says this language differs from the statute, which requires that the fact be described by a criminal statute, not that the fact itself be described as a crime, and contends that the instruction was therefore confusing and misleading.

¶28 We hold that the knowledge instruction properly informed the jury of the applicable law. The language of the instruction was not significantly different from the statutory language. Both refer to facts or circumstances that are

crimes. Whether the crimes are described "by law" or in a "statute defining the offense" is no different in this instance. Accordingly, this substantive argument also lacks merit, and Gerdts's trial counsel was not ineffective for failing to challenge the knowledge instruction on this ground.[5]

## II. PROSECUTORIAL MISCONDUCT

¶29 Finally, Gerdts argues that the prosecutor committed misconduct when she asked Gerdts on cross examination whether he knew why the arresting officer would have made up his testimony indicating that Gerdts mentioned the van before being told a van was involved. Again, we disagree.

¶30 To establish prosecutorial misconduct, Gerdts has the burden of establishing the conduct's impropriety as well as its prejudicial effect. *State v. Bryant*, 89 Wn. App. 857, 873, 950 P.2d 1004 (1998), *review denied*, 137 Wn.2d 1017 (1999). We review allegedly improper comments in the context of the entire argument, the issues in the case, the evidence addressed in the argument, and the instructions given. *Bryant*, 89 Wn. App. at 873. Reversal is required only if " 'there is a substantial likelihood that the alleged prosecutorial misconduct affected the verdict.' " *Bryant*, 89 Wn. App. at 874 (internal quotation marks omitted) (quoting *State v. Luvene*, 127 Wn.2d 690, 701, 903 P.2d 960 (1995)).

¶31 Even presuming misconduct, we cannot say there was a substantial likelihood that the State's brief inquiry into this matter affected the jury's verdict. First, defense counsel objected to this questioning and the trial court sustained the objection. Second, although the trial court never affirmatively struck Gerdts's first response, it did instruct the jury that the jury was the sole judge of credibility and weight. And third, the State's eyewitness

---

[5] We note that this instruction has been approved in *State v. Johnson*, 119 Wn.2d 167, 174-75, 829 P.2d 1082 (1992) and *State v. Vanoli*, 86 Wn. App. 643, 937 P.2d 1166, *review denied*, 133 Wn.2d 1022 (1997). But in neither case did the reviewing court specifically examine the difference between the statutory language and the language of the instruction.

evidence presented through the Sorlies was very strong, their testimony was supported by physical evidence, and there was no evidence suggesting they had any motivation to misrepresent the facts. Given these facts, Gerdts fails to show a prejudicial effect and this argument also fails.

¶32 Finding no error, we affirm.

BRIDGEWATER and QUINN-BRINTNALL, JJ., concur.