# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68314-4-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FOUAD ALI AHMED, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 3, 2013 |
| | ) | |

VERELLEN, J. — Fouad Ahmed appeals his conviction for delivery of cocaine.

Ahmed argues the prosecutor committed misconduct by misstating the law, by

expressing a personal opinion on his credibility, and by misstating the jury's role. The

prosecutor properly articulated the knowledge element of the delivery charge and did

not express a personal opinion on Ahmed's credibility. The prosecutor told the jury that

"[w]e can't be afraid of the truth in this case."[1] The prosecutor did not tell the jury that it

had to declare the truth, which would have been an improper statement of the jury's

role. No misconduct occurred, and we affirm Ahmed's conviction.

## BACKGROUND

In the early evening of August 31, 2008, Fouad Ahmed and Said Elazmaoui were

sitting in a coffee shop in the Pine/Pike corridor of downtown Seattle. Ahmed testified

---

[1] Report of Proceedings (RP) (July 14, 2009) at 143.

that Elazmaoui asked him for $40 to go buy something. Before Elazmaoui left, he placed several rocks of crack on the table where Ahmed sat. According to Ahmed, he did not know it was crack cocaine.

On this same day, the Anti-Crime Team of the Seattle Police Department was targeting the 200 block of Pine Street. Officer Jennifer Morris was working undercover and was walking down the street when Elazmaoui approached her and asked if she wanted to have some "fun."[2] When Officer Morris asked what type of fun, Elazmaoui replied that they could "get some dope and smoke it together."[3] Officer Morris said she was looking for "rocks."[4]

Elazmaoui led Officer Morris to the coffee shop where Ahmed had remained. Elazmaoui and Ahmed spoke for about 30 seconds in Arabic, a language Officer Morris could not understand. Officer Morris then asked Elazmaoui if Ahmed had any rocks. Elazmaoui said Ahmed did and asked Officer Morris to sit down next to Ahmed. According to Officer Morris, Ahmed asked if she had $40, and Officer Morris asked Ahmed if he had any rocks. Ahmed showed Officer Morris two white rocks that appeared to be crack cocaine, which he held in his hand. Officer Morris gave $40 to Ahmed and took the two rocks from Ahmed's hand.

According to Ahmed, when Elazmaoui arrived with Officer Morris, Elazmaoui told Ahmed he would give back the $40 if Ahmed returned "the thing that I gave you."[5] Ahmed testified that when he asked Elazmaoui for the $40, Elazmaoui told Ahmed to

---

[2] RP (July 13, 2009) at 33.

[3] Id.

[4] Id. "Rock" is a street name for rock cocaine.

[5] RP (July 14, 2009) at 108.

2

take the cash from Officer Morris. Ahmed further testified that as he attempted to return the crack to Elazmaoui, Officer Morris grabbed the crack from Ahmed's hand and gave him $40.

Shortly thereafter, police arrested Ahmed at the scene. The rocks tested positive as crack cocaine. The State charged Ahmed with one count of delivery of cocaine under the Uniform Controlled Substances Act, chapter 69.50 RCW, and a jury convicted him. Ahmed timely appeals.

## DISCUSSION

Ahmed contends he was deprived of a fair trial due to multiple instances of prosecutorial misconduct. To prevail on a claim of prosecutorial misconduct, Ahmed must show the prosecutor's conduct was both improper and prejudicial in the context of the entire record and circumstances at trial.[6] We will find prejudice only if there is a substantial likelihood that the misconduct affected the jury's verdict.[7]

Defense counsel did not object to any of the alleged instances of misconduct. Absent a proper objection and request for a curative instruction, Ahmed must demonstrate the prosecutor's comments were so flagrant or ill-intentioned that an instruction could not have cured the prejudice.[8] Defense counsel's failure to object strongly suggests the argument in question did not appear prejudicial in the context of trial.[9]

---

[6] State v. Stenson, 132 Wn.2d 668, 718-19, 940 P.2d 1239 (1997).
[7] Id.
[8] State v. Anderson, 153 Wn. App. 417, 427, 220 P.3d 1273 (2009).
[9] State v. McKenzie, 157 Wn.2d 44, 52, 134 P.3d 221 (2006).

The first alleged instance of misconduct occurred when the prosecutor told the jury during closing that Ahmed "doesn't need to know . . . what was in his hand."[10] Ahmed contends this comment constituted an improper statement of the knowledge element of the crime of delivery of a controlled substance pursuant to RCW 69.50.401(1).[11] The crime of delivery of a controlled substance requires the State to allege and prove a defendant knew he was delivering a controlled substance, but it is not required to allege or prove a defendant knew what specific controlled substance he was delivering.[12]

While the single sentence Ahmed highlights is an inaccurate statement of the law, Ahmed takes the prosecutor's comment out of context. The full statement by the prosecutor accurately explained the State's burden to prove Ahmed knew he had crack in his hand:

> The defendant knew that the substance delivered was a controlled substance.
>
> We heard some testimony here late in the day. Did he know?
> Well, what is the definition of know?
>
> In this case, the jury instructions give it to you. It's instruction number ten.
>
> The second sentence is: [It is] not necessary that the person know that that the fact, circumstances or result as defined by law as being unlawful, in other words, he doesn't need to know that what was in his hand, it was illegal to have in his hand, he just needs to know that it was there. . . .

---

[10] RP (July 14, 2009) at 133.

[11] "[I]t is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." RCW 69.50.401(1).

[12] State v. Nunez-Martinez, 90 Wn. App. 250, 253-56, 951 P.2d 823 (1998); see also State v. Vanoli, 86 Wn. App. 643, 646, 937 P.2d 1166 (1997) ("Guilty knowledge, i.e., knowledge that the drug being delivered is illegal, is an essential element of the crime of delivery of a controlled substance.").

*The law in this case on this particular element about knowledge is
did you know that that, in this case, crack cocaine was in your hand?*[13]

Although not the most artful articulation, the prosecutor's discussion of the knowledge element was not misconduct, and, even if misconduct, does not satisfy the "flagrant and ill-intentioned" standard Ahmed must meet.

Ahmed next argues the prosecutor committed misconduct by telling the jury not to be afraid of the truth. Ahmed contends the comments amounted to a misstatement of the jury's role. During rebuttal, the prosecutor stated, "These facts, we can't get away from them. This evidence, we can't get away from it. It's tough. We can't be afraid of the truth in this case."[14] Moments later, as the prosecutor ended rebuttal, he stated, "And her [Officer Morris's] testimony was she walked up, she had some conversations, and that's when the crack was revealed to her. You can't be afraid of the truth in this case."[15]

In State v. Anderson, the prosecutor told the jury that "by your verdict in this case, you will declare the truth about what happened."[16] Defense counsel objected. Division Two of this court determined the comment was improper because "the jury's duty is to determine whether the State has proved its allegations against a defendant beyond a reasonable doubt."[17] In analyzing whether there was a substantial likelihood

---

[13] RP (July 14, 2009) at 133-34 (emphasis added).

[14] Id. at 143.

[15] Id. at 144-45.

[16] 153 Wn. App. 417, 424, 220 P.3d 1273 (2009).

[17] Id. at 429.

the comment affected the verdict,[18] the court looked to the existence of clear jury instructions articulating the jury's actual duties, coupled with counsel's discussion of the evidence during closing, and determined Anderson had not met his burden.[19]

The State distinguishes Anderson, arguing the prosecutor here never told the jury to "declare" the truth, but instead argued the jury could not be afraid of the truth. The prosecutor's comments in Anderson directed the jury to "declare the truth," the defendant objected, and this court still held that a new trial was not warranted.[20] An equally important distinction is Ahmed's counsel's failure to object in this case. Here, the prosecutor's comment was not a directive to the jury to determine the truth, and defense counsel did not object. As in Anderson, the jury was properly instructed on its duties and the State's burden. And, as in Anderson, counsel discussed the evidence thoroughly during closing arguments. We therefore conclude that if the improper directive in Anderson did not warrant a new trial, Ahmed cannot demonstrate the prosecutor's comment—which was not a directive to the jury to find the truth—was so flagrant or ill-intentioned that an instruction could not have cured the prejudice.

Ahmed also contends the prosecutor twice impermissibly commented on his credibility. A prosecutor has wide latitude in closing argument to draw reasonable inferences from the evidence and to freely comment on witness credibility based on the

---

[18] If a statement is improper but defense counsel objects, as in Anderson, the court considers whether there was a substantial likelihood the statements affected the jury's verdict. Id. at 427.

[19] Id. at 429.

[20] Id.

evidence.[21] Prejudicial error will not be found unless it is "clear and unmistakable" that counsel is expressing a personal opinion.[22]

First, Ahmed argues the prosecutor's comment that the jury could not "fear the truth" constituted an impermissible opinion on his credibility. Ahmed further highlights that during his rebuttal argument, the prosecutor used the first person to refer to Ahmed's testimony, indirectly rendering a comment on Ahmed's credibility:

> Sometimes I don't know what to do, but I know what not to do. I know I don't take the stand in my defense, claim a mental injury, not provide proof.
>
> I know that if I'm going to say that I was injured, I'm going to think about how is it I need to show that to the jury.
>
> I know that I'm not going to question an officer, their credibility, when I've struggled through my own answers under the direct questions that were asked of him by co-counsel.
>
> . . . .
>
> We've seen the defendant chose to testify on his behalf. Defendant chose . . .to sit in this chair and struggle through answers, and now the question is being put back on the State about the answers that were given by its officers.[23]

Neither of the comments reflected counsel's personal opinion, despite Ahmed's contention to the contrary. Rather, the prosecutor's arguments drew inferences from the evidence regarding the defendant's credibility.

---

[21] State v. Gregory, 158 Wn.2d 759, 860, 147 P.3d 1201 (2006).

[22] State v. Brett, 126 Wn.2d 136, 175, 892 P.2d 29 (1995) (quoting State v. Sargent, 40 Wn. App. 340, 344, 698 P.2d 598 (1985)); see also State v. Ish, 170 Wn.2d 189, 196, 241 P.3d 389 (2010) (it is misconduct for a prosecutor to vouch for a witness by expressing a personal belief as to the witness's truthfulness).

[23] RP (July 14, 2009) at 143-44.

And with respect to the second comment in which the prosecutor adopted the first person, it appears the prosecutor was attempting to address Ahmed's testimony about the effects of his brain injury. During direct examination, Ahmed's counsel had asked him about a "significant incident" in his life."[24] Ahmed testified that he had suffered a head injury and had brain surgery after being beaten by thieves. He testified the brain injury affected his ability to "perceive and know things," as well as caused him to have seizures.[25]

Finally, Ahmed relies on State v. Pierce for the proposition that a prosecutor commits misconduct when he or she steps into the shoes of the defendant and uses the first person to discuss the defendant's thought processes.[26] In Pierce, a prosecution for felony murder, burglary, robbery, and arson, the prosecutor appealed to the passion and prejudice of the jury and argued facts outside the evidence, including (1) the prosecutor's first person narrative of the thoughts Pierce must have had leading up to the crimes; and (2) the prosecutor's fabricated description of the murders.[27]

While the prosecutor should have avoided the use of the first person, he was attempting to address Ahmed's testimony about the effects of his brain injury. Unlike in Pierce, the prosecutor did not draw on facts outside the evidence or "attribu[te] repugnant and amoral thoughts" to the defendant; "thoughts that were based on the

---

[24] Id. at 98.

[25] Id. at 99.

[26] 169 Wn. App. 533, 553, 280 P.3d 1158, review denied, 175 Wn.2d 1025, 291 P.3d 253 (2012).

[27] Id. A third instance of misconduct in Pierce was the prosecutor's argument that the victims could not have imagined they would be murdered in their own home. Id. at 553, 555.

prosecutor's speculation and not the evidence."[28]  Nor did the prosecutor fabricate a narrative of the crime, as in <u>Pierce</u>.  Ahmed's reliance on <u>Pierce</u> is misplaced.

Affirmed.

WE CONCUR:

---

[28] <u>Id.</u> at 554.